**Reversed and Remanded and Opinion Filed August 31, 2020**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

No. 05-19-00780-CV

**WHITE NILE SOFTWARE, INC., Appellant**
**V.**
**CARRINGTON, COLEMAN, SLOMAN**
**& BLUMENTHAL, LLP, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-17105**

## MEMORANDUM OPINION
Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Osborne

White Nile Software, Inc. appeals the trial court's final judgment dismissing with prejudice its claims against and awarding Carrington, Coleman, Sloman & Blumenthal, LLP its attorneys' fees. This appeal is part of a multi-year, multi-case saga that originated in 2006 stemming from Carrington Coleman's representation of White Nile and some of its directors in a lawsuit against Steven Thrasher. It involves claims and counterclaims in state and federal courts, as well as bankruptcy proceedings, including adversary proceedings.

In this appeal, White Nile raises six issues, arguing the trial court erred when it granted Carrington Coleman's motion to dismiss White Nile's claims under the Texas Citizens Participation Act (TCPA), TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.001–.011, because: (1) White Nile's claims against Carrington Coleman are not related to or in response to Carrington Coleman's exercise of free speech, the right to association, or the right to petition under the TCPA; (2) the commercial speech exception applies to White Nile's claims; (3) White Nile presented clear and specific evidence supporting its breach of fiduciary duty claims; (4) it presented clear and specific evidence supporting its professional negligence claims; (5) it presented clear and specific evidence supporting its civil conspiracy and aiding and abetting breach of fiduciary duty claims; and (6) Carrington Coleman failed to establish by a preponderance of the evidence its defenses of (a) standing, capacity, and authority, (b) statute of limitations, and (c) attorney immunity.

We conclude the trial court erred when it granted Carrington Coleman's motion to dismiss under the TCPA. The trial court's final judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Initially, we note that the majority of facts alleged in the pleadings and on appeal do not pertain to this lawsuit or even to Carrington Coleman. However, given that this appeal is part of a long, involved series of events and legal proceedings

involving several corporations and individuals, we endeavor to provide a brief summary of the factual and procedural history that leads to the present appeal.

White Nile was formed in July 2005 by Thrasher and Edward Mandel to develop Thrasher's concept for a new kind of search engine. Eventually, others joined White Nile, including Paul Williams, Jason Coleman, and Skinner Layne. Layne's parents also became investors in White Nile. However, the relationship between Mandel and Thrasher deteriorated. On January 17, 2006, Mandel, Williams, and Layne incorporated NeXplore Technologies, Inc., which Thrasher claimed was for the purpose of using intellectual property they misappropriated from Thrasher and White Nile.

**The *Thrasher* Case**

In 2006, Mandel, Williams, and Layne retained Jeffrey Travis of Calhoun & Travis, LLP to represent White Nile and Mandel, Williams, and Layne, individually. On April 6, 2006, White Nile filed suit against Thrasher. *White Nile Software v. Thrasher*, No. 06-03319 (14th Dist. Ct., Dallas County, Tex.) (*Thrasher* case). The *Thrasher* case was assigned to the 14th district court. On January 31, 2007, Thrasher filed his original counterclaims and third-party petition, which alleged claims against Mandel, Williams, Layne, and Layne's parents.

Carrington Coleman was retained by White Nile, Mandel, Williams, Layne, and Layne's parents to appear as lead counsel in the *Thrasher* case. After Carrington Coleman appeared in the case, Thrasher filed his second amended counterclaim and

third-party petition which asserted a derivative claim in his capacity as a shareholder of White Nile against Mandel, Williams, and Layne. He also filed a motion to disqualify Carrington Coleman. On May 15, 2007, the 14th district court signed an order authorizing Carrington Coleman to withdraw as counsel for White Nile. However, it remained as counsel for Mandel, Williams, Layne, and Layne's parents. Afterward, new counsel filed an appearance in the *Thrasher* case on behalf of White Nile. Then, on October 1, 2007, the 14th district court granted a motion to substitute new counsel for Mandel, Williams, Layne, and Layne's parents in place of Carrington Coleman.

On May 29, 2009, the 14th district court signed an order appointing a receiver for White Nile to:

> (1) direct and control White Nile's participation in [the *Thrasher* case];
>
> (2) take actual possession of all White Nile's books and records, including but not limited to all files of White Nile's current and prior counsel in [the *Thrasher* case], and all bank accounts of White Nile; and
>
> (3) take constructive possession of all White Nile's other property.

*See* CIV. PRAC. & REM. §§ 64.001(a)(3) (court may appoint receiver in action between partners or others jointly owning or interested in any property or fund), 64.031 (general powers and duties of receiver).

After the withdrawal of Carrington Coleman and the appointment of a receiver, proceedings continued in the *Thrasher* case.

**The *Mandel* Bankruptcy Proceeding**

On January 25, 2010, Mandel filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.[1] *In re Mandel*, No. 10-40219 (Bankr. E.D. Tex.) (*Mandel* Bankruptcy). On April 23, 2010, the *Thrasher* case was removed to the bankruptcy court as an adversary proceeding. *White Nile Software, Inc. v. Thrasher* (*In re Mandel*), No. 10-03089-bjh (Bankr. E.D. Tex.) (the adversary proceeding). There were numerous orders in and appeals of the bankruptcy and adversary proceedings.

On March 21, 2011, the receiver filed her third motion to abstain and remand the *Thrasher* case arguing in part that she had identified potential new causes of action against third parties in the *Thrasher* case that could be lost as a result of limitations on May 29, 2011. On May 6, 2011, the bankruptcy court severed and remanded all non-debtor claims in the *Thrasher* case back to the 14th district court.

**Reopening of the *Thrasher* Case in State District Court**

On May 27, 2011, the receiver and Carrington Coleman signed an agreement tolling limitations with regard to claims related to the firm's representation of White Nile until July 27, 2011. Meanwhile, on June 3, 2011, the receiver filed a motion to clarify seeking permission to engage specialized professional malpractice counsel to investigate and, if appropriate, initiate third-party claims. However, on August 3,

---

[1] Pursuant to Chapter 11, debtors typically attempt to file a "plan" proposing payment of their debts. *See* 11 U.S.C. § 1121.

2011, the 14th district court signed an order that denied the receiver authority to engage specialized professional malpractice counsel to investigate and, if appropriate, initiate third-party actions against former White Nile professionals or any former White Nile counsel.

## The Instant Case

On November 12, 2018, approximately seven years after the 14th district court denied the receiver's request to investigate and initiate any third-party actions against White Nile's counsel, White Nile filed its first original petition[2] against Carrington Coleman alleging claims for professional negligence, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy (*Carrington Coleman* case).[3] The *Carrington Coleman* case was assigned to the 298th district court.

---

[2] There is nothing in the petition suggesting that White Nile's claims were brought as a shareholder derivative action.

[3] The majority of White Nile's original petition focuses on the facts of the *Thrasher* case and the *Mandel* Bankruptcy as well as other proceedings related to those cases and the actions of individuals who are not a party to the *Carrington Coleman* case. However, with respect to Carrington Coleman it alleged that its first attorney, Travis, notified Mandel, Williams, and Layne in correspondence that was subsequently transmitted to Carrington Coleman of the potential conflict of interest should Carrington Coleman represent White Nile and the individual directors. Nevertheless, White Nile alleged that Carrington Coleman appeared as counsel, not only for White Nile, but also Mandel, Williams, and Layne in the *Thrasher* case and commenced "active litigation." It further alleged that by February 7, 2007, "Travis had notified Carrington Coleman of 'skeletons in the closet' and clearly delineated the nature and extent of the prior, ongoing and existing conflicts of interest inherent in the plan and scheme of [Mandel, Williams, and Layne] as it related to White Nile and the other constituents of White Nile." After Thrasher filed a motion to disqualify Carrington Coleman, the firm withdrew as counsel for White Nile but continued to represent Mandel, Williams, and Layne. White Nile contends that Carrington Coleman failed to apprise the court of the "nature and prior conduct and conflicts in the representation of White Nile" and worked with Travis to cover up the true nature of its representation and the conflicts of interest. White Nile claims that this allowed Mandel, Williams, and Layne to continue to direct the litigation on behalf of White Nile,

On April 9, 2019, Carrington Coleman filed an answer generally denying the allegations and asserting the affirmative defenses of, inter alia, statute of limitations and attorney immunity. Its answer also included a "verified denial of capacity, standing [or] authority of Plaintiff" alleging a receiver had been appointed for White Nile, the receiver had not been discharged, and it did not appear that the receiver had joined or authorized the filing of the *Carington Coleman* case.[4] On the same day, it also filed a motion to dismiss pursuant to the TCPA arguing the claims brought against it implicated its right to petition and of association. In addition, Carrington Coleman claimed that White Nile could not meet its burden to establish by clear and specific evidence a prima facie case for each essential element of the claims. Further, Carrington Coleman maintained that (1) White Nile's claims were barred by the applicable statutes of limitation, (2) its claims for aiding and abetting breach of fiduciary duty and conspiracy were barred by the attorney immunity doctrine, and (3) White Nile lacked standing, capacity, or authority to assert the claims against Carrington Coleman.

On May 20, 2019, White Nile filed an amended motion to transfer the *Carrington Coleman* case from the 298th district court, arguing the 14th district

---

which ultimately resulted in the appointment of the receiver but only after White Nile incurred additional costs, expense, loss, and damages.

[4] The record is unclear whether the verified challenge to White Nile's capacity and authority was intended to be a motion under Texas Rule of Civil Procedure 12.

–7–

court had primary jurisdiction over the issues raised because White Nile's claims arose from the same transactions or occurrences at issue in the *Thrasher* case.

On May 21, 2019, White Nile filed its response to the motion to dismiss in the 298th district court. On May 22, 2019, White Nile filed a supplement to its response attaching the declaration of the receiver. However, in that declaration, the receiver did not state that she had initiated, authorized, or joined the *Carrington Coleman* case.

On May 30, 2019, an order was signed granting White Nile's motion to transfer the *Carrington Coleman* case to the 14th district court. However, on June 1, 2019, the 298th district court granted Carrington Coleman's motion to dismiss under the TCPA and set the matter for a hearing on attorneys' fees. On June 18, 2019, White Nile filed an amended motion for reconsideration and new trial in the 14th district court, which was denied. On June 19, 2019, after a hearing on attorneys' fees, the 14th district court signed a final judgment dismissing all of White Nile's claims against Carrington Coleman with prejudice and awarding Carrington Coleman its attorneys' fees.

## II. RIGHT TO PETITION AND RIGHT OF ASSOCIATION

In issue one, White Nile argues the trial court erred when it granted Carrington Coleman's motion to dismiss because White Nile's claims against Carrington Coleman are not related to or in response to Carrington Coleman's exercise of free speech, the right to association, or the right to petition under the TCPA. White Nile

contends that Carrington Coleman's prior representation of it along with Mandel, Williams, and Layne in the *Thrasher* case was not protected by the TCPA. Specifically, it contends that "the allegation[] that an attorney preferred the interest of one client over another, or engaged in representations of multiple parties when there was real adversity between those parties, is [not] the type of protected expression that the Legislature wanted to [] receive [the] early judicial review contemplated by the TCPA."

Carrington Coleman responds that "White Nile's Petition establishes on its face that White Nile's claims relate to Carrington Coleman's 'making or submitting of a statement or document in or pertaining to a judicial proceeding.'" It also argues that "[t]he gist of White Nile's complaint is that 'Carrington Coleman commenced active litigation on behalf of [Mandel, Williams, and Layne] while purporting to represent White Nile in the [*Thrasher* case].'" Carrington Coleman contends that White Nile is alleging that "after Carrington Coleman withdrew from representing White Nile in May 2007, it continued to represent [Mandel, Williams, and Layne] in the [*Thrasher* case] for four months, and that this continued litigation representation somehow damaged White Nile." Further, it maintains that "[i]t is not an exaggeration to say that every allegation about Carrington Coleman relates to Carrington Coleman's litigation representation of Mandel, Williams and Layne [] in the [*Thrasher* case], and that therefore White Nile's claims necessarily relate to communications "in or pertaining to . . . a judicial proceeding."

## A. Standard of Review

An appellate court reviews de novo a trial court's determination that the parties met or failed to meet their respective burdens under § 27.005. *Collaborative Imaging, LLC v. Zotec Partners, LLC*, No. 05-19-01256-CV, 2020 WL 3118614, at *2 (Tex. App.—Dallas June 12, 2020, no pet.) (mem. op.). In conducting this review, an appellate court considers, in the light most favorable to the plaintiff–nonmovant, the pleadings and any supporting and opposing affidavits and other evidence stating the facts on which the claim or defense is based. CIV. PRAC. & REM. § 27.006(a); *Collaborative Imaging*, 2020 WL 3118614, at *2. In other words, an appellate court reads both the petition and the affidavits in the manner most sympathetic to the TCPA's non-applicability. *United Dev. Funding, L.P. v. Megatel Homes III, LLC*, No. 05-19-00647-CV, 2020 WL 2781801, at *3 (Tex. App.—Dallas May 29, 2020, no pet.) (mem. op.). The plaintiff–nonmovant's pleadings are generally "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

### 1. Applicable Law

The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. CIV. PRAC. & REM. § 27.002[5]; *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig.

---

[5] The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess.

proceeding). The TCPA permits a party to file a motion to dismiss a legal action that is based on, related to, or is in response to that party's exercise of its right of free speech, to petition, or of association as defined in the statute. CIV. PRAC. & REM. §§ 27.001, 27.003. To accomplish its purpose, the TCPA endorses a summary process, requiring judicial review of the pleadings and limited evidence. *See In re Lipsky*, 460 S.W.3d at 589. This summary procedure requires a trial court to dismiss suits, or particular claims within suits, that demonstrably implicate those statutorily protected rights, unless the plaintiff–nonmovant makes a prima facie showing that its claims have merit. CIV. PRAC. & REM. § 27.005(b); *Sullivan v. Abraham*, 488 S.W.3d 294, 295 (Tex. 2016).

The TCPA dismissal motion procedure has three steps. *Thomas v. BioTE Med., LLC*, No. 05-19-00163-CV, 2020 WL 948087, at *2 (Tex. App.—Dallas Feb. 26, 2020, no pet.) (mem. op.). First, the defendant–movant has the initial burden to show by a preponderance of the evidence that the case is based on, relates to, or is in response to the party's exercise of the right of free speech, to petition, or of association. CIV. PRAC. & REM. § 27.005(b). If the defendant–movant does not meet this burden, the motion fails. *Thomas*, 2020 WL 948087, at *2. Second, if the defendant–movant satisfies the first step, the plaintiff–nonmovant must establish by

Law Serv. 684, 687. Because this lawsuit was filed before September 1, 2019, the amendments do not apply to this case. See Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500. All citations to the TCPA are to the version before the 2019 amendments took effect.

clear and specific evidence a prima facie case for each essential element of its claim. CIV. PRAC. & REM. § 27.005(c). If the plaintiff–nonmovant fails to meet this burden, the trial court must dismiss the claim. *Id.* § 27.005 (b)–(c). Third, if the plaintiff–nonmovant meets its step-two burden and the defendant–movant has asserted a defense, to prevail the defendant–movant must establish by a preponderance of the evidence each essential element of a valid defense to the plaintiff–nonmovant's claims. *Id.* § 27.005(d).

The protections of the TCPA are specifically directed at communications. *Rouzier v. BioTE Med., LLC*, No. 05-19-00277-CV, 2019 WL 6242305, at *3 (Tex. App.—Dallas Nov. 22, 2019, no pet.) (mem. op.). The TCPA defines "exercise of the right to petition" as "a communication in or pertaining to," among other listed items, "a judicial proceeding." CIV. PRAC. & REM. § 27.001(4)(A)(i). Also, the TCPA broadly defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2). As defined in the TCPA, a "communication" "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

In order to implicate the rights to petition and of association, the defendant–movant is required to demonstrate that the plaintiff–nonmovant's claims alleged communications. *See Clinical Pathology Labs., Inc. v. Polo*, No. 08-19-00067-CV,

2020 WL 4519803, at *5 (Tex. App.—El Paso Aug. 6, 2020, no pet. h.).  A broad range of communications, in various mediums, is covered by the TCPA.  CIV. PRAC. & REM. § 27.001(1); *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) (recognizing that under the TCPA, "[a]lmost every imaginable form of communication, in any medium, is covered").  However, the definition does not include a failure to communicate.  *SSCP Mgmt., Inc. v. Sutherland/Palumbo, LLC*, No. 02-19-00254-CV, 2020 WL 4517326, at *3 (Tex. App.—Fort Worth Aug. 6, 2020, no pet. h.) (mem. op.); *Ray v. Fikes*, No. 02-19-00232-CV, 2019 WL 6606170, at *3 (Tex. App.—Fort Worth Dec. 6, 2019, pet. denied) (mem. op.).

Artful pleading cannot be a detour around the TCPA.  *See Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 798 (Tex. App.—Fort Worth 2018, pet. denied). Nevertheless, courts cannot blindly accept attempts by the defendant–movant to characterize the plaintiff–nonmovant's claims as implicating protected expression. *Cook v. Simmons*, No. 05-19-00091-CV, 2019 WL 5884426, at *4 (Tex. App.— Dallas Nov. 12, 2019, pet. filed) (mem. op.).  When the plaintiff–nonmovant's pleadings and evidence do not reference the communication or its content and the defendant–movant does not plead or show the content of the particular communication it alleges is protected, courts are unable to conclude that the plaintiff–nonmovant's claims are in response to a protected communication and subject to the TCPA.  *See Cook v. Kyser*, No. 05-19-00311-CV, 2019 WL 5884429, at *3 (Tex. App.—Dallas Nov. 12, 2019, pet. filed) (mem. op.); *Simmons*, 2019 WL

–13–

5884426, at *3; *Smith*, 565 S.W.3d at 798; *Bacharach v. Doe*, No. 14-14-00947-CV, 2016 WL 269958, at *3 (Tex. App.—Houston [14th Dist.] Jan. 21, 2016, no pet.) (mem. op.). Similarly, when the pleadings, evidence, and parties' arguments are based on a mix of protected and unprotected activity, and they do not distinguish between the two, a defendant–movant's motion to dismiss under the TCPA should be denied. *See Weller v. MonoCoque Diversified Interests, LLC*, No. 03-19-00127-CV, 2020 WL 3582885, at *4 (Tex. App.—Austin July 1, 2020, no pet.) (mem. op.) (trial court did not err when it denied motion to dismiss because at best counterclaims were mix of protected and unprotected activity and pleadings, evidence, and parties' argument provided no way to parse out which counterclaim was based on protected rather than unprotected conduct and to what degree); *Beving v. Beadles*, 563 S.W.3d 399, 409 (Tex. App.—Fort Worth 2018, pet. denied) (trial court did not err when it denied dismissal because defendant–movant did not provide appellate court with guidance for how to determine which claims were in response to protected rather than unprotected conduct, nor was the court able to identify means for accomplishing task).

### 2. Application of the Law to the Facts

Our initial task is to determine whether White Nile's claims were based on, related to, or made in response to "communications" that would invoke the TCPA. In its original petition, White Nile asserted four claims against Carrington Coleman. First, White Nile alleged a claim for professional negligence claiming that "at all

–14–

times material to the claims . . . Travis [sic] was the attorney[] in fact for [White Nile] and owed duties to [it]" and "the conduct of Travis [sic] . . . constituted a breach of fiduciary duty proximately causing [White Nile's] injuries and [] damages." Further, in summary, it alleged that Carrington Coleman failed to meet the appropriate standard of care and breached duties owed to While Nile with respect to the *Thrasher* case as follows:

(1)    failing to properly and fully investigate the rights, interests, claims and property of White Nile;

(2)    representing White Nile despite a conflict of interest and failing to advise White Nile of that conflict;

(3)    failing to identify or properly plead claims and defenses available to White Nile and failing to conduct necessary discovery;

(4)    failing to prosecute White Nile's claims or protect White Nile's property and contractual rights; and

(5)    failing to advise White Nile concerning corporate governance, file claims to prevent or to notify an independent governance board for White Nile of Mandel, Williams, and Layne's conduct, and to advise of the risks related to the failure to pursue claims to protect White Nile's intellectual property rights, and failure to advise White Nile of potential violations or failure to comply with intellectual property laws and procedures.

Second, White Nile alleged Carrington Coleman breached its fiduciary duties when it "made unreasonable use of the confidences that White Nile placed in [it]" and that Carrington Coleman placed the interests of itself and [Mandel, Williams, and Layne] before White Nile's interests, using that advantage to their benefit. Third, White Nile alleged Carrington Coleman aided and abetted Mandel's breach of fiduciary duty, claiming the bankruptcy court already found Mandel breached several of his

–15–

fiduciary duties to White Nile. Fourth, White Nile alleged Mandel, Williams, Layne, and Carrington Coleman engaged in a civil conspiracy to oust Thrasher and steal White Nile's intellectual property, assets, and business opportunities.

White Nile's claims do not allege that Carrington Coleman made any communications. Rather, these claims are based on Carrington Coleman's failure to communicate with or act on behalf of White Nile, or its use of confidential information to its or its other clients' benefit. White Nile's claims based on Carrington Coleman's alleged failure to communicate are not subject to the TCPA. *See SSCP Mgmt.*, 2020 WL 4517326, at *3; *Ray*, 2019 WL 6606170, at *3.

However, to the extent White Nile's petition can be construed to allege communications, we turn to Carrington Coleman's motion to dismiss under the TCPA. In its motion to dismiss, Carrington Coleman claimed that "[o]ther than the bare assertion that Carrington Coleman had a conflict of interest, White Nile does not identify any act or omission by Carrington Coleman that allegedly breached a duty to White Nile or caused any actual injury to White Nile." With respect to the right to petition, Carrington Coleman argued:

> White Nile's [p]etition establishes on its face that White Nile's claims relate to Carrington Coleman's "making or submitting of a statement or document in or pertaining to a judicial proceeding." The gist of White Nile's complaint is that "Carrington Coleman commenced active litigation on behalf of [Mandel, Williams, and Layne] while purporting to represent White Nile in the [*Thrasher* case]." White Nile alleges that after Carrington Coleman withdrew from representing White Nile in May 2007, it continued to represent [Mandel, Williams, and Layne] in the lawsuit for four months, and this continued representation somehow

–16–

damaged White Nile." In short, every allegation about Carrington Coleman relates to Carrington Coleman's representation of Mandel, Williams and Layne in the [*Thrasher* case].

As to the right of association, Carrington Coleman argued:

> White Nile's [p]etition expressly alleges that Carrington Coleman "aided and abetted and conspired with" [Mandel, Williams, and Layne] in breach of [Mandel, Williams, and Layne's] duties owed to White Nile. This alleged aiding, abetting and conspiring supposedly occurred as part of Carrington Coleman's representation of [Mandel, Williams, and Layne], and necessarily involved agreements and other communications among those parties. According to White Nile's [p]etition, the purpose of the association of Carrington Coleman and [Mandel, Williams, and Layne] was to collectively pursue a "common interest": "The objective of the conspiracy was to oust Thrasher and steal White Nile's [i]ntellectual [p]roperty, [a]ssets and business opportunities." An allegation that parties agreed to act together to pursue a common, tortious goal is, by definition, an allegation that relates to "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."

However, Carrington Coleman did not plead or show the content of any particular communications that White Nile's claims are based on, relate to, or are in response to. This is compounded by the fact that the alleged subjects of any communications were Mandel, Williams, and Layne who are not parties to the *Carrington Coleman* case. *See Simmons*, 2019 WL 5884426, at *3 (noting difficulty of reviewing contention that suit involved communications protected by TCPA when alleged subjects of communications were not parties to lawsuit).

In addition, White Nile's response to the motion to dismiss asserted that its claims were not subject to the TCPA and it did not plead or provide evidence of any

–17–

alleged communications or their content.  Instead, White Nile alleged that Travis made communications as follows:

> [M]andel together with [Williams and Layne] embarked on a plan or scheme to divest Thrasher of intellectual property that he had conveyed to White Nile.  [Mandel, Williams, and Layne] did this with the aid of an attorney, [] Travis and his firm Travis & Calhoun who, as confirmed by a series of contemporaneous memoranda concocted a plan or scheme that would provide cover for Mandel and his co-conspirators to form a new company and defeat a claim of misappropriation, setting up a defense that White Nile would be unable to realize upon those opportunities due to deadlock.

> . . . . Mandel retained Carrington Coleman to replace Travis, at the time which Mandel was engineering a reverse merger of Ne[X]plore to further investments.  The filings at the time demonstrate that at [Mandel, Williams, and Layne's] direction Ne[X]plore's fund raising was based upon the intellectual property misappropriated from White Nile.  Despite being advised by Travis that joint representation of both White Nile and Mandel and his coconspirators in the litigation would likely draw complaints of conflict of interest, and with access to the entirety of the files generated by Travis, including the memorandums setting forth the initial plan or scheme, Carrington Coleman agreed to the representation, received funding from the competing company Ne[X]plore (a non-client) and commenced to undertake activities in the litigation on behalf, not only of [Mandel, Williams, and Layne], but of White Nile at the direction of [Mandel, Williams, and Layne].

Without pleadings or evidence of Carrington Coleman's alleged "communications" and their contents, it is difficult to determine that those communications were protected by and subject to the TCPA.  *See Kyser*, 2019 WL 5884429, at *3; *Simmons*, 2019 WL 5884426, at *3; *Smith*, 565 S.W.3d at 798; *Bacharach*, 2016 WL 269958, at *3.  White Nile's petition does not make clear what communications, if any, its claims are based on, relate to, or are in response to; neither Carrington Coleman's motion to dismiss nor White Nile's response provide

–18–

that information either.  Accordingly, we conclude Carrington Coleman did not meet its burden to establish by a preponderance of the evidence that White Nile's claims are based on, relate to, or are in response to Carrington Coleman's exercise of the right to petition or of association.

Issue one is decided against Carrington Coleman.  As a result, we need not consider Carrington Coleman's remaining issues on appeal.

### III.  CONCLUSION

We conclude the trial court erred when it granted Carrington Coleman's motion to dismiss under the TCPA.

The trial court's final judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

190780F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WHITE NILE SOFTWARE, INC.,
Appellant

No. 05-19-00780-CV      V.

CARRINGTON, COLEMAN,
SLOMAN & BLUMENTHAL, LLP,
Appellee

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-17105.
Opinion delivered by Justice
Osborne. Justices Schenck and
Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court further proceedings consistent with this opinion.

It is **ORDERED** that appellant WHITE NILE SOFTWARE, INC. recover its costs of this appeal from appellee CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, LLP.

Judgment entered August 31, 2020.