

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---------------------------------------------

No. 02-17-00223-CV

---------------------------------------------

CYNTHIA BEVING, Appellant

v.

JOHN F. BEADLES, INDIVIDUALLY AND AS
INDEPENDENT EXECUTOR OF THE ESTATE OF
DUDLEY D. BEADLES, Appellee

---

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-283896-16

---

Before Gabriel, Pittman, and Birdwell, JJ.
Opinion by Justice Pittman
Gabriel, J., concurs without opinion.

**OPINION**

Once again, this court must don its legal pith helmet and face the task of exploring the farthest reaches of the Texas Citizens Participation Act (TCPA).[1] Specifically, this court must address whether the trial court correctly denied Appellant Cynthia Beving's TCPA motion to dismiss the third-party action filed against her by Appellee John F. Beadles, individually and in his capacity as executor of the estate of Dudley D. Beadles (Beadles). For the reasons set forth herein, we affirm the trial court's denial of Beving's motion to dismiss and remand the case for further proceedings.

**BACKGROUND**

This appeal involves a litigious and rancorous break-up of a business owned and operated by four attorneys. Although the clerk's record is voluminous and the parties' briefs are unnecessarily verbose, the sole issue in this appeal is fairly simple and the background of the underlying litigation straightforward.

The law firm Beadles, Newman & Lawler, PC (BNL) was formed in 1990 by attorneys and founding shareholders Dudley Beadles, Charles Newman, and Frank Lawler. Later, Dudley's son, John Beadles, became a shareholder. BNL's business

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011 (West 2015). The TCPA is commonly referred to as Texas's "Anti-SLAPP" statute, so-called because the TCPA seeks to limit "**S**trategic **L**awsuit[s] **A**gainst **P**ublic **P**articipation." *See In re Lipsky*, 411 S.W.3d 530, 536 n.1 (Tex. App.—Fort Worth 2013, orig. proceeding), *mand. denied*, 460 S.W.3d 579 (Tex. 2015).

focused on preparing closing documents for title companies, bankers, and realtors. BNL asserts that because of the nature of this business, it developed and relied upon certain proprietary software that provided BNL a competitive advantage.

Beving was hired by BNL on November 16, 2005, to act as the firm's comptroller, and she later became the firm's director of human resources. It appears that Beving's tasks as comptroller also included managing payroll. Shortly after joining BNL, Beving began assisting Dudley with various personal tasks—i.e., paying personal bills and managing medical concerns—that she completed during work hours.

Charles and Frank eventually became dissatisfied with the structure and operation of BNL; in short, they believed they were doing most of the work to generate business but Dudley and John were making more money than Frank. Thus, Charles and Frank began considering forming a new firm. When Charles met with Dudley to discuss these issues, Beving was present to take notes. As the men continued to discuss their options for restructuring, Beving often served as a liaison passing correspondence between them.

Negotiations broke down and Charles and Frank formed the new firm. However, in the transition, Beving alleges that Charles instructed her not to inform Dudley that the new firm had in fact been formed. Beving further alleges that when Charles announced the new firm to BNL's employees, he instructed all of the employees who wished to leave with Charles and Frank to tender resignation letters,

which Beving did. Beving states that Charles tasked her with investigating and completing all necessary steps for getting the new firm up and running, and that at all relevant times during the transition, she acted pursuant to Charles's direction and authorization.

Although Dudley seemingly had no objections to the transition, only weeks after the new firm commenced operations, it received a letter demanding that it cease and desist using certain software and assets purportedly owned by BNL. Charles responded by filing the underlying lawsuit against BNL, Dudley, John, and American Document Systems, LLC, seeking, *inter alia*, injunctive relief to continue using the software. Beving contends that she was asked to sign an affidavit to serve as evidence in support of Charles's lawsuit and request for injunctive relief. After Charles filed his lawsuit, Beving was deposed.

Shortly after Beving's deposition, BNL, Dudley, and John filed counterclaims against Charles and Frank, and although they did not file suit against Beving, their counterclaim asserted that Beving was a co-conspirator who had helped Charles and Frank destroy BNL. Several months later, Beving received a letter from BNL's attorney who alleged that "[i]t is clear from your own testimony . . . that you have encouraged, aided, participated and have benefitted by the wrongs that you and others have committed," and demanded payment of $17,020,971 in damages.

4

Litigation progressed, but Beving was not added as a party. However, about six months after receiving the demand letter, BNL, Dudley, and John[2] filed an amended pleading and added Beving as a third-party defendant, with Dudley asserting claims against her for breach of fiduciary duties, tortious interference with contract, tortious interference with prospective relations, fraud, fraud by nondisclosure, aiding and abetting, conspiracy, and unjust enrichment, and John asserting claims against her for fraud, fraud by nondisclosure, aiding and abetting, conspiracy, and unjust enrichment. The amended pleading asserted, in part, that

> [i]nstead of spending time doing what they had promised (negotiating the purchase of the company's assets and returning the company's documents), [Beving and other defendants] started planning and then executed a "preemptive strike" against the company by filing a fictitious lawsuit with false allegations.
>
> . . . Beving signed an affidavit that contained false allegations of fact and purposely failed to disclose other material facts with the intention of misleading the company and the court to allow these Defendants to continue misappropriating the company's property. Beving . . . knew that the statements were and are false and knew that the affidavit failed to disclose other material information.

The allegations notwithstanding, the thirteen specific causes of action are all based on facts occurring during the dissolution of BNL and formation of the new firm and not from statements made in Beving's affidavit or deposition.

---

[2]Dudley passed away during this lawsuit, and his claims were brought by John as independent executor of his estate.

Beving filed a TCPA motion to dismiss. Beadles filed a response. After Beving filed her motion to dismiss but before the hearing on the motion, Beadles amended again to remove the allegations that Beving had provided false testimony in her affidavit to support a "fictitious lawsuit with false allegations." After the parties appeared for a hearing, the trial court denied Beving's motion to dismiss. This appeal followed.

Beving raises a single issue and asserts that the trial court erred by denying her motion to dismiss because she established that Beadles's third-party claims fell within the scope of the TCPA, because Beadles failed to establish a prima facie case to support his claims by clear and specific evidence, and because Beving established by a preponderance of the evidence her defenses to Beadles's claims.

## APPLICABLE LAW

### I. The TCPA

The TCPA was passed to "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 433–35 (Tex. 2017) (explaining that the TCPA seeks to balance the tension between protecting First Amendment freedoms and preserving the rights of individuals to file meritorious lawsuits); *see also Lipsky*, 460 S.W.3d at 584. Thus, at an

6

early stage in litigation, a defendant may file a motion to dismiss a legal action pursuant to the TCPA. Tex. Civ. Prac. & Rem. Code Ann. § 27.003.

Once a motion to dismiss is filed, a burden-shifting mechanism goes into effect. *Lipsky*, 460 S.W.3d at 586–87. First, a defendant moving for dismissal has the burden to show by a preponderance of the evidence that the plaintiff filed a "legal action" that is "based on, relates to, or is in response to" the defendant's exercise of the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), .005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). Second, if the defendant satisfies that burden, to avoid dismissal, a plaintiff must establish by clear and specific evidence a prima facie case for each essential element of its claim. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). The requirement for "clear and specific evidence" means the plaintiff "must provide enough detail to show the factual basis for its claim." *Lipsky*, 460 S.W.3d at 590–91. Third, even if the plaintiff establishes a prima facie case, the defendant can still obtain dismissal if he "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d).

## II.    Standard of Review

We review a trial court's ruling on a TCPA motion to dismiss de novo. *DeAngelis v. Protective Parents Coal.*, No. 02-16-00216-CV, 2018 WL 3673308, at *9 (Tex. App.—Fort Worth Aug. 2, 2018, no pet.); *Lane v. Phares*, 544 S.W.3d 881, 886 (Tex.

7

App.—Fort Worth 2018, no pet.). Specifically, we review de novo the legal question of whether the movant has established by a preponderance of the evidence that the challenged legal action is covered under the TCPA. *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.) (op. on reh'g). In our review, we consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *Campbell v. Clark*, 471 S.W.3d 615, 623 (Tex. App.—Dallas 2015, no pet.).

## THE TCPA'S APPLICABILITY *VEL NON*

The threshold question we must resolve is whether the TCPA applies to this case. *Youngkin*, 546 S.W.3d at 680. When the trial court denied Beving's motion to dismiss, it did not expressly determine whether she met this burden. Thus, we begin our de novo review by considering whether Beving set forth a preponderance of the evidence to establish that Beadles's third-party claims are subject to the TCPA. *See Serafine*, 466 S.W.3d at 357.

## I. Beving's Affidavit and Deposition Testimony Constituted an Exercise of her Right to Petition as Defined by the TCPA

"[W]hen interpreting any statute, we should begin with the statutory language." *Holder v. Hall*, 512 U.S. 874, 914, 114 S. Ct. 2581, 2603 (1994) (Thomas, J.,

8

concurring). The TCPA broadly[3] defines the "exercise of the right to petition" to mean any of the following:

> (A) a communication in or pertaining to:
>
>> (i) a judicial proceeding;
>>
>> (ii) an official proceeding, other than a judicial proceeding, to administer the law;
>>
>> (iii) an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;
>>
>> (iv) a legislative proceeding, including a proceeding of a legislative committee;
>>
>> (v) a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;
>>
>> (vi) a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;
>>
>> (vii) a proceeding of the governing body of any political subdivision of this state;
>>
>> (viii) a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or
>>
>> (ix) a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

---

[3] *See Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 283 (Tex. App.—Dallas 2015, pet. denied) ("'Exercise of the right to petition' is defined broadly under the TCPA.").

9

(B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(C) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(D) a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E) any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4). The TCPA defines a "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

At least one of our sister courts has recognized an apparent dissonance between the understanding of the "exercise of the right to petition" as defined by the TCPA and the understanding of the "exercise of the right to petition" as a First Amendment right. *See Jardin v. Marklund*, 431 S.W.3d 765, 772–73 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (op. on reh'g) (discussing a movant's argument that simply filing a pleading in a lawsuit between private parties invokes the TCPA as protecting the right to petition "despite . . . the particular meanings of the

10

constitutional rights at issue"). That is, despite the TCPA's express purpose to protect constitutional rights, the TCPA's definition of "the right to petition" is far broader. Tex. Civ. Prac. & Rem. Code Ann. § 27.002.[4]

Yet, taking the TCPA's enacted language as the "surest guide to what lawmakers intended," *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 463 (Tex. 2009) (op. on reh'g) (Willett, J., concurring), and remaining mindful that "when interpreting a statute, '[t]he text is the alpha and the omega of the interpretive process[,]'" *Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist.*, No. 17-0146, 2018 WL 2372810, at *2 (Tex. May 25, 2018) (quoting *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)), we agree with Beving that her deposition and affidavit testimony provided in the underlying lawsuit constitute a communication

---

[4]In a concurring opinion on a case before the Austin Court of Appeals, Justice Pemberton compellingly explored the TCPA's expansive definition of the right to petition by positing a hypothetical morning communication between him and his wife as falling within the TCPA's scope of protection. *Serafine*, 466 S.W.3d at 378 (Pemberton, J., concurring). Justice Pemberton concluded, and we agree, that to apply the TCPA's plain meaning based on the literal, unambiguous definition of the statute, "the right to petition" could be unintentionally exercised by numerous Texans "even before their feet hit the floor each morning." *Id.* at 378–79. However, as Justice Joseph Story observed many decades ago, courts cannot disregard "the plain meaning of a [statutory] provision, not contradicted by any other provision . . . because we believe the framers of that instrument could not intend what they say." 1 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES 411 (Boston, Hilliard, Gray Co. 1833); *see Mitchell v. Great Works Milling & Mfg. Co.*, 17 F. Cas. 496, 499 (C.C.D. Me. 1843) (Story, J.) ("We are bound to interpret the act as we find it, and to make such an interpretation as its language and its apparent objects require. We must take it to be true, that the legislature intend precisely what they say . . . .").

made in a judicial proceeding—that is, an exercise of Beving's right to petition, which is protected by the TCPA.[5] *See Tervita, LLC*, 482 S.W.3d at 284; *cf. Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S. Ct. 1146, 1149 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Indeed, at oral argument, Beadles's counsel conceded that Beving's actions in providing affidavit and deposition testimony are covered by the TCPA.

---

[5]Again, we note our agreement with Justice Pemberton's observation that "[i]f read literally, what would initially seem to be the plain meaning of 'communication in or pertaining to . . . a judicial proceeding' (and, in turn, the 'exercise of the right to petition') would, standing alone, encompass *a virtually limitless range of writings and statements* related to a court case." *Serafine*, 466 S.W.3d at 378 (Pemberton, J., concurring) (emphasis added). Although we see his point that courts "may have faltered into a 'blindly narrow and out-of-context reading[] of statutory language[,]'" *id.* at 379, we are disinclined to apply any extratextual tool of interpretation to a clear, unambiguous statute, or to invoke the absurdity doctrine to avoid an unambiguous statute simply because its application brings about a peculiar result. *See BankDirect Capital Fin., LLC*, 519 S.W.3d at 85 (affirming that although the Code Construction Act expressly permits judges to consider a host of extrinsic statutory construction aids, regardless of whether the statute is ambiguous, "we have resolutely refused the Act's entreaties to disregard plain language" because an unambiguous statute "forbids open-ended improvisation, including the nontextual purposivism and consequentialism winked at in the Code Construction Act"); *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (refusing to invoke the absurdity doctrine when applying an unambiguous statute brings about a peculiar result because "mere oddity does not equal absurdity"); *see also Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 117, 127 S. Ct. 1534, 1556 (2007) (Scalia, J., dissenting) ("Thus, what judges believe Congress 'meant' (apart from the text) has a disturbing but entirely unsurprising tendency to be whatever judges think Congress *must* have meant, i.e., *should* have meant." (emphasis in original)).

Therefore, we conclude that Beving's affidavit and deposition testimony constituted "the exercise of the right to petition" as defined by the TCPA.

## II. Beadles's Lawsuit Against Beving is not "based on, relate[d] to," or "in response to" Beving's Right to Petition

Having concluded that Beving's affidavit and deposition testimony are a protected exercise of her right to petition, to determine if Beving satisfied step one, we still must consider whether she set forth a preponderance of evidence that Beadles's third-party claims are "based on, relate[] to, or [are] in response to" her exercise of said right. Tex. Civ. Prac. & Rem Code Ann. § 27.003(a). Beving alleges that "[h]ad she not provided an affidavit and her subsequent deposition[,] she would not have been sued."

### A. Beadles's Factual Allegations Do Not Implicate the TCPA

During oral argument, Beving's counsel conceded that Beadles had not "hooked" the allegations that Beving provided false testimony in her affidavit and deposition to the specific thirteen causes of action actually alleged against her but nonetheless maintained that Beadles's allegations in his superseded pleadings demonstrate that Beving was sued because of her affidavit and deposition testimony.[6]

_____

[6]After Beving filed her TCPA motion to dismiss, BNL, Dudley, and John amended their pleading to remove the factual allegation that Beving had signed a false affidavit. During oral argument, there was significant discussion concerning our scope of review and whether a trial court and reviewing court could consider factual allegations in a superseded pleading. Beving argued that courts could consider statements in a superseded pleading and that it was some evidence that she had been sued because of her exercise of the right to petition. Beadles argued that a superseded

13

Our review of Beadles's pleading likewise reveals that none of the claims are "based on, relate[d] to," or "in response to" Beving's affidavit or deposition testimony in any ordinary sense of the terms. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (explaining in a TCPA motion-to-dismiss analysis, "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations"); *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd) (recognizing that implicit in a TCPA analysis is that "we do not blindly accept attempts by the . . . [d]efendants to characterize [plaintiff's] claims as implicating protected expression" but instead we "view the pleadings in the light most favorable to [plaintiff]; i.e., favoring the conclusion that her claims are not predicated on protected expression"); *see also Ghrist v. MBH Real Estate LLC*, No. 02-17-00411-CV, 2018 WL 3060331, at *5 n.9 (Tex. App.—Fort Worth June 21, 2018, no pet.) (mem. op.) (rejecting wholesale approach to TCPA application).

**B. Beving's Evidence that Beadles's Claims are "based on," "relate[d] to," or "in response to" her Protected Activity is not a Preponderance**

The allegation in Beadles's superseded pleading regarding Beving's allegedly false affidavit testimony is some—albeit slight—direct evidence that the third-party

_____

pleading could not be considered as TCPA evidence. At our request, Beadles filed a post-submission letter with two cases in support of his position.

Because our analysis does not turn on the statements in the superseded pleading, we consider the allegations without resolving whether statements in superseded pleadings are within the scope of our review.

claims are "based on, relate[d] to," or "in response to" Beving's affidavit and deposition testimony. The only other evidence Beving directs us to is two lines of circumstantial evidence: (1) the fact that Beving was sued after her affidavit and deposition but not before Beadles conducted extensive discovery that they would purportedly not otherwise have been entitled to, and (2) the fact that Beving is the only non-attorney who is being sued.[7]

Circumstantial evidence is proper for us to consider in a TCPA review. *See Lipsky*, 460 S.W.3d at 589, 591 (stating that "[a]ll evidentiary standards . . . recognize the relevance of circumstantial evidence" and thus holding that circumstantial evidence is appropriate to consider in a TCPA motion to dismiss). Although "[b]y its very nature, circumstantial evidence often involves linking what may be apparently insignificant and unrelated events to establish a pattern," *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993), the inferences drawn from circumstantial evidence must be reasonable. *See COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 671 (Tex. App.—Dallas 2004, pet. denied) ("Only reasonable inferences drawn from the known circumstances establish a material fact.").

---

[7]Beving also refers to Beadles's counsel's demand letter, in which Beadles's counsel asserts that Beving's liability was made "clear from [Beving's] own testimony." However, that letter was on behalf of BNL—not Beadles. And BNL has not filed any claims against Beving. Therefore, the letter is not evidence that is relevant to determining whether *Beadles's claims* against Beving are in response to Beving's affidavit or deposition testimony. *Cf. Jardin*, 431 S.W.3d at 774 (refusing to grant movant's TCPA motion to dismiss when a third-party rather than movant had exercised the right to petition).

15

Beving's inferences from her circumstantial evidence are unreasonable because they are speculative and conclusory; there is simply too great an analytical gap for us to traverse. First, as explained above, all thirteen causes of action arise out of facts occurring well before Beving's affidavit and deposition testimony, and the false-affidavit allegation in the superseded pleading was not used to support any of the thirteen causes of action. *See Hersh*, 526 S.W.3d at 467; *Sloat*, 513 S.W.3d at 504.

Second, Beving's contention that Beadles waited ten months to add her as a party in order to obtain discovery to which he would not otherwise be entitled is purely speculative and conclusory. There are myriad reasons for deciding if and when to bring a legal action against a person. For example, it appears that Beadles obtained additional information—i.e., certain e-mails from Beving on a backup server—which may have led to filing the third-party claims against Beving.

Finally, that Beving is the only non-attorney at BNL who was sued does not create an inference that Beadles's third-party petition was brought in response to her affidavit and deposition testimony. Instead, the third-party petition asserts that she was sued because she allegedly committed tortious conduct during the dissolution of BNL and formation of the new law firm. *See Sloat*, 513 S.W.3d at 504.

What Beving really asks us to do is to ignore the factual predicate as alleged in the third-party petition and instead engage in pure speculation based on a few lines of circumstantial evidence in order to divine that Beadles has artfully pleaded causes of action against Beving to retaliate and punish her for providing affidavit and deposition

16

testimony. This court cannot engage in such a speculative exercise. This does not meet the preponderance-of-the-evidence standard necessary to show that Beadles's third-party claims are in response to her exercise of the right to petition.[8] *See Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 833 (Tex. App.—Fort Worth 2008, no pet.) ("Speculation is not evidence.").

**C.** **To the Extent Beadles's Claims are, in Part, "based on, relate[d] to," or "in response to" Beving's Protected Activity, Dismissal Would Still be Improper Because the Claims are Also Based, in Part, on Unprotected Activity**

But even if Beving is correct that Beadles's third-party claims against her are, in part, "based on, relate[d] to," or "in response to" her affidavit and deposition testimony, the claims are still also based on, related to, or in response to other activity unprotected by the TCPA—i.e., Beving's actions during the break-up of BNL and the formation of the new firm. "When a legal action is in response to both expression protected by the TCPA and other unprotected activity, the legal action is subject to dismissal *only to the extent that it is in response to the protected conduct*, as opposed to being subject to dismissal in its entirety." *Walker v. Hartman*, 516 S.W.3d 71, 81 (Tex.

---

[8]In so concluding, we do not foreclose the possibility that Beving's theory is correct and that Beadles's third-party claims are simply an attempt to punish or harass her. Indeed, it seems likely that such a rancorous background would at least tempt the parties to employ litigation out of sheer malevolence. But if this were the case, Beving has more appropriate remedies such as a Rule 13 dismissal and sanctions against both Beadles and his counsel for claims the evidence shows were brought in bad faith or to harass. *See* Tex. R. Civ. P. 13. The TCPA is not a Swiss army knife, a tool always ready to obtain the early dismissal of every objectionable case or controversy.

App.—Beaumont 2017, pet. denied) (emphasis added). Because, at best, Beadles's third-party claims are based on a mix of protected and unprotected activity, and because Beving does not provide us guidance for how to determine which claims are in response to protected rather than unprotected conduct, nor are we able to identify a means to accomplish the task, the trial court did not err by denying her motion. *See id.*

Having survived our latest trek into the TCPA jungle, we hold that Beving has not satisfied her initial burden of establishing by a preponderance of evidence that Beadles's claims are "based on, relate[d] to," or "in response to" protected activity covered by the TCPA. *See Serafine,* 466 S.W.3d at 360 (holding to the extent counterclaims were based on threats made outside of context of lawsuit, TCPA movant did not satisfy initial burden to show that these portions of counterclaims were subject to TCPA); *Herrera v. Stahl,* 441 S.W.3d 739, 744 (Tex. App.—San Antonio 2014, no pet.) (holding trial court did not err by denying TCPA motion to dismiss because movant only set forth conclusory statements that plaintiff's claims were based on, related to, or in response to defendants' exercise of their right to petition, and conclusory statements are not probative evidence). Accordingly, we overrule her sole issue.[9]

---

[9]Because we hold that Beadles's claims are not covered by the TCPA, we do not address Beving's arguments concerning the next steps in the TCPA's burden-shifting mechanism. *See* Tex. R. App. P. 47.1; *Herrera,* 441 S.W.3d at 745–46.

## CONCLUSION

Having overruled Beving's sole issue, we affirm the trial court's order and remand the case for further proceedings.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered: October 18, 2018