**Opinion issued December 3, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00056-CV

———————————

**ALEXANDRIA MARRUJO AND ALLIED STONE, INC, Appellants**

**V.**

**WISENBAKER BUILDER SERVICES, INC., Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-54748**

---

## MEMORANDUM OPINION

Appellee, Wisenbaker Builder Services, Inc. ("Wisenbaker"), sued appellants, Alexandria Marrujo and Allied Stone, Inc. ("Allied"), for conduct related to Marrujo's alleged violation of a non-compete agreement. Appellants filed a motion to dismiss Wisenbaker's claims under the Texas Citizens Participation Act

("TCPA"), which the trial court denied.[1] In this interlocutory appeal, appellants challenge the denial of their TCPA motion to dismiss.[2] Wisenbaker also filed a cross-appeal from the trial court's denial of its request for attorney's fees and costs.

We affirm.

## Background

In August 2018, Wisenbaker, a supplier of new residential builder products, filed suit against its former employee, Marrujo, and her current employer, Allied, alleging that Marrujo was in violation of her non-compete agreement and that Allied tortiously interfered with Wisenbaker's contract with Marrujo. Wisenbaker sought injunctive relief and monetary damages against Marrujo and Allied.

In its petition, Wisenbaker alleged that it hired Marrujo for a position in its accounting department in June 2014. In October 2014, Marrujo became an Inside Sale Representative ("ISR") for Wisenbaker and was the "primary customer service contact for several Wisenbaker customers in Wisenbaker's Houston Division." As an ISR, Marrujo was "responsible for serving as the direct point of contact for

---

[1]  *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The Legislature amended the TCPA in June 2019, but the amendments only apply to an action filed on or after September 1, 2019. Because this suit was filed in August 2018, the 2019 amendments to the TCPA do not apply. The TCPA as it existed before September 1, 2019 is thus referenced in this memorandum opinion.

[2]  *See id.* §§ 27.008, 51.014(a)(12).

2

Wisenbaker customers when they needed to order Wisenbaker products or otherwise had customer service questions or concerns."

Wisenbaker alleged that Marrujo had access to Wisenbaker's confidential customer-specific information including:

(1) pricing, rebates, and other terms and conditions for customers; (2) internal cost structures, margin information, and profitability information; (3) vendor cost and pricing information; (4) customer lists, customer needs and preferences, and program offerings; (5) process sheets, which are the playbooks for Wisenbaker's relationship with its customers, and include customer-specific pricing, discounts, terms, ordering and invoicing processes, and contact information; (6) contracts with customers and vendors; and (7) confidential information regarding business strategies, sales strategies, and marketing strategies.

Wisenbaker also alleged that Marrujo was "tasked with directly managing customer relationships."

Marrujo signed a non-compete agreement with Wisenbaker. It prohibited Marrujo from "provid[ing] any services to any Competitor that are similar to any services that [she] provided to [Wisenbaker] at any time during [her] employment" for two years following the termination of her employment with Wisenbaker. The non-compete agreement also prohibited Marrujo from "provid[ing] any service to any Competitor that would likely result in the disclosure of any item of Proprietary, Confidential, or Trade Secret Information to which [she] had access at any time during [her] employment."

3

The non-compete agreement geographically limited these restrictions to the "Metropolitan Statistical Area that includes Houston, Texas." It further required Marrujo to provide notice of the non-compete agreement "to any Competitor with whom [Marrujo] may potentially have a relationship," and notice "of any relationship with any Competitor to [Wisenbaker.]"

On October 19, 2017, Wisenbaker fired Marrujo. Wisenbaker later learned that Marrujo was working for Allied, "a direct competitor of Wisenbaker," in the Houston area, "performing the same or similar services to those she performed as an ISR for Wisenbaker" in violation of the non-compete agreement. Wisenbaker alleged that Marrujo failed to disclose to Wisenbaker that she was working for Allied, despite her obligation to do so under the non-compete agreement.

Wisenbaker further alleged that, on June 14, 2018, Marrujo "contacted a current Wisenbaker employee [Maria Garcia] and asked that employee for confidential information about Wisenbaker's relationship with a current customer, Design Tech Homes." Marrujo "informed [Garcia] that she was working in an operations role for a competitor of Wisenbaker that sells countertops . . . and that she needed the information for a presentation she was working on for Design Tech Homes." Finally, Wisenbaker alleged that "[s]ince Marrujo began working for Allied, Wisenbaker has lost business to Allied in the countertops market."

As to Allied, Wisenbaker alleged that Allied was, or should have been, on notice of Marrujo's non-compete agreement because Marrujo was contractually obligated to provide such notice. According to Wisenbaker, Allied nevertheless "continues to employ Marrujo in the Houston area in a position in which she is performing the same or similar services to those she performed as an ISR for Wisenbaker."

Appellants moved to dismiss Wisenbaker's claims under the TCPA, arguing that Wisenbaker's claims are based on their exercise of the right of free speech and the right of association. Appellants further argued that Wisenbaker claims are in response to Marrujo's exercise of the right to petition in a separate federal lawsuit against Wisenbaker under the Fair Labor Standards Act ("FLSA").

In their TCPA motion to dismiss, as well as a supporting declaration from Marrujo, appellants asserted that Wisenbaker had classified Marrujo as an exempt salaried employee, meaning she did not earn overtime pay even if she worked more than 40 hours per week. According to appellants, in 2017, the United States Department of Labor (DOL) began investigating Wisenbaker and determined that Wisenbaker had misclassified employees who were eligible for overtime pay as exempt. Marrujo had cooperated with the DOL investigation and contended that Wisenbaker knew of her cooperation. Appellants claimed that the termination of

5

Marrujo's employment on October 19, 2017 came shortly after her supervisor asked for information about which employees were cooperating in the DOL investigation.

Appellants also stated in their TCPA motion to dismiss that Marrujo was hired by Allied, a "fabricator and installer of natural and engineered stone countertops in residential properties," on January 22, 2018 as a Customer Service Representative ("CSR"). And as a CSR for Allied, Marrujo "does not participate in setting pricing of products, nor have access to pricing information or quoting of pricing to customers, presentations to customers or any direct sales activities with customers." Nor does she work with any vendors or companies that she worked with while employed by Wisenbaker.

Appellants further asserted that on June 1, 2018, Wisenbaker sent Marrujo a letter disclaiming all wrongdoing related to the DOL investigation "but agreeing to pay Marrujo an amount certain in exchange for a full release of any and all claims." Marrujo rejected the offer and joined another former Wisenbaker employee in a federal complaint against Wisenbaker for violations of the FLSA. Wisenbaker was served with Marrujo's FLSA lawsuit on June 22, 2018.

One week later, on June 29, 2018, Wisenbaker sent separate letters to Marrujo and Allied stating that Wisenbaker had "strong reason to believe" that Marrujo was performing work for Allied that was similar to her "duties during [her] employment with Wisenbaker." Because Allied is a "direct competitor of Wisenbaker,"

6

Wisenbaker asserted that Marrujo's employment with Allied violated her "post-employment obligations to Wisenbaker to not provide services to a competitor of Wisenbaker for two years after [her] employment with Wisenbaker ended, and to provide Wisenbaker notice of any relationship with any competitor of Wisenbaker." Marrujo alleged that although responded she was not in violation of her non-compete agreement, Wisenbaker "filed the instant lawsuit to harass [appellants] and to intimidate Marrujo into dropping her [FLSA] Lawsuit."

In its response to appellants' TCPA motion to dismiss, Wisenbaker argued that its claims do not implicate appellants' exercise of the right of association or the right of free speech because it is not seeking to enjoin Marrujo from working at Allied altogether or to prohibit communications between Marrujo and Allied related to her employment. Rather, Wisenbaker argued that it seeks only to "ensure that Marrujo abides by the non-compete . . . while she associates with Allied."

Wisenbaker also argued that its claims are not in response to Marrujo's FLSA lawsuit. Instead, according to Wisenbaker, its suit is responsive to Marrujo's June 14, 2018 contact with Garcia and its confirmation, on July 19, 2018, from a former employee, Jose Ortiz, that the services Marrujo provided to Allied were similar to the services she provided to Wisenbaker, in violation of her non-compete agreement. Accordingly, Wisenbaker asserted "it is clear that the timing of Wisenbaker's filing of this lawsuit was motivated by its discovery that Marrujo was violating her non-

7

compete and Allied was tortiously interfering with same, not by the filing of Marrujo's FLSA Lawsuit."

In support of its response, Wisenbaker submitted a declaration or affidavit from these persons:

- Denise Shore, a current Wisenbaker employee responsible for supervising ISRs;

- Jose Ortiz, a former employee of Wisenbaker and Allied who averred that Marrujo was "performing services for Allied in the Houston metropolitan statistical area that are similar to the services she provided to Wisenbaker as an ISR";

- Maria Garcia, a current Wisenbaker employee who averred that, on June 14, 2018, Marrujo contacted her and "asked for confidential information about Wisenbaker's relationship with a current customer of Wisenbaker, Design Tech Homes" because Marrujo "was working in an operations role for a competitor of Wisenbaker that sells countertops" and "needed the information for a presentation she was working on for Design Tech Homes";

- James Babineaux, a current Wisenbaker employee who averred that "since January 2018 Wisenbaker has lost business to Allied," that this lawsuit was "motivated by Wisenbaker's desire to enforce [Marrujo's] non-compete obligation . . . [and] had nothing to do with Marrujo filing a lawsuit against Wisenbaker," and that "Wisenbaker has consistently sought to enforce its employees' restrictive covenant obligations"; and

- Paul Knettel, an attorney for Wisenbaker who averred that Wisenbaker sent letters to Marrujo, Ortiz, and Allied "regarding Wisenbaker's concern that Marrujo and Ortiz were violating the[ir] non-compete [agreements]." He also averred that Wisenbaker sent similar letters to former employee Kelly Dorman and his current employer ACProducts, Inc. ("ACPI"). According to Knettel, neither Ortiz nor Dorman were involved in Marrujo's FLSA lawsuit. Knettel further averred that Ortiz provided his declaration to Wisenbaker on July 19, 2018, and based on

the information provided by Ortiz, Wisenbaker filed its lawsuit on August 15, 2018.

Wisenbaker also sought attorney's fees and costs under section 27.009(b) of the TCPA because, according to Wisenbaker, appellants' motion to dismiss was "frivolous or solely intended to delay."

Appellants filed a reply that included a second declaration from Marrujo, as well as declarations from Raymond Huang and Kelly Dorman. Huang's declaration stated that Allied has hired "over twenty people who at one time or another worked for Wisenbaker and to [his] knowledge, non-compete issues have not ever arisen previously." He also averred that in the last three years, "Allied has hired approximately 5-6 former Wisenbaker employees [and] [e]xcept for Mrs. Marrujo, neither Allied nor any common employees have been sued by Wisenbaker." Dorman provided similar statements, averring that he currently works for ACPI, another Wisenbaker competitor, and has not been sued by Wisenbaker.

After a hearing, the trial court signed a written order denying appellants' motion to dismiss and denying Wisenbaker's request for attorney's fees and costs. The trial court entered findings of fact and conclusions of law, under section 27.007 of the TCPA, stating that Wisenbaker's lawsuit "was not brought to deter or prevent [appellants] from exercising constitutional rights and was not brought: (1) for an improper purpose; (2) to harass or to cause unnecessary delay; or (3) to increase the cost of litigation."

## Dismissal under the TCPA

In eight issues, appellants contend the trial court erred by denying their TCPA motion to dismiss because (1) they satisfied their initial burden to show that the TCPA applies; (2) Wisenbaker failed to establish by clear and specific evidence a prima facie case of each essential element of its claims; (3) evidence relied on by Wisenbaker in support of its response to the motion to dismiss should have been struck; and (4) their motion was timely filed and not preempted. We disagree with appellants' initial contention—presented in appellants' first through fourth issues—that they have demonstrated the TCPA's applicability in this case. And because this is dispositive of appellants' appeal, we do not reach appellants' remaining issues.

## A. Standard of Review

We review de novo the denial of a TCPA motion to dismiss. *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In making this determination, the court views the pleadings and evidence in the light most favorable to the nonmovant. *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

**B. Applicable Law**

The TCPA "is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). It is intended "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d 584, 589 (Tex. 2015).

A party invoking the TCPA's protections by filing a motion to dismiss must show by a preponderance of the evidence that the TCPA applies. *See* TEX. CIV. PRAC. & REM. CODE § 27.003; *see also id*. § 27.005(b). The version of the TCPA that applies here mandates the dismissal of a "legal action" that is "based on, relates to, or is in response to the [moving] party's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* § 27.005(b); *In re Lipsky*, 460 S.W.3d at 586–87. A "legal action" can consist of an entire lawsuit. *Creative Oil & Gas LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019).

Once the movant shows that the TCPA applies, the burden shifts to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element" of its claim. TEX. CIV. PRAC. & REM. CODE § 27.005(c). The nonmovant can avoid this burden-shifting requirement by demonstrating that one of the TCPA's exceptions applies, such as the commercial-speech exemption. *See id.* § 27.010(b).

11

## C. Exercise of the Right of Free Speech

Appellants argue that the TCPA applies to Wisenbaker's lawsuit because it is based on, related to, or is in response to their exercise of the right of free speech. The TCPA defines the "exercise of the right to free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). At the time this suit was filed, a "matter of public concern" included an issue related to: "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).

Specifically, appellants argue that Wisenbaker's lawsuit implicates their exercise of the right of free speech because it is based on Marrujo's alleged conversation with Wisenbaker's employee, Maria Garcia. They also argue that Wisenbaker's lawsuit is related to communications between Marrujo and Allied in the context of their business relationship, which "necessarily require[s] communications about a good, product, or service in the marketplace[.]"

Finally, appellants contend that Wisenbaker's allegations implicate their right of free speech because they are based on communications made in connection with the alleged solicitation of Wisenbaker's customers and resulting loss of business to Wisenbaker. According to appellants, "Allied could not hire Marrujo or conduct an ongoing business relationship without communications about 'a good, product or

12

service in the marketplace[,]' nor could Wisenbaker lose business to Allied absent a communication with Wisenbaker's customers about the same."

Relying on a decision from the Dallas Court of Appeals, Wisenbaker responds that appellants' communications amongst themselves, as well as with any potential customers, do not implicate their exercise of the right of free speech because "[c]onstruing the [TCPA] to denote that all private business discussions are a 'matter of public concern' if the business offers a good, service, or product in the marketplace . . . is a potentially absurd result that was not contemplated by the Legislature." *See Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 277 (Tex. App.—Dallas 2019, pet. denied).

In light of recent decisions from the Texas Supreme Court and this Court, we agree with Wisenbaker. *See Creative Oil & Gas*, 591 S.W.3d at 137; *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. filed) (en banc).

The Texas Supreme Court explained in *Creative Oil & Gas*, a decision issued after appellants filed their motion to dismiss, that "not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern." 591 S.W.3d at 137. The term "a good, product, or service in the marketplace" must be interpreted considering the common meaning of a "matter of public concern," which does not include "purely private matters."

13

*Id.* at 135. Therefore, a communication regarding "a good, product, or service in the marketplace" does not constitute a "matter of public concern" unless the communication has "some relevance to a public audience of potential buyers or sellers." *Id.*[3]

Relying in part on *Creative Oil & Gas*, this Court held in *Gaskamp,* which also was decided after appellants filed their motion to dismiss, that communications between former employees related to the employees' alleged misappropriation, sharing, and use of the plaintiff's confidential information did not constitute an exercise of their free-speech rights because these communications "had no potential impact on the wider community or a public audience of potential buyers or sellers. In short, the communications had no public relevance beyond the pecuniary interests of the private parties." 596 S.W.3d at 477.

This Court concluded in *Gaskamp* that communications made by the plaintiff's former employees in soliciting and procuring business from a third party did not constitute an exercise of the employees' free-speech rights because those communications did not have any "relevance to a public audience of buyers or sellers

---

[3]  *See also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019) (record did not indicate "that the dispute had any relevance to the broader marketplace or otherwise could reasonably be characterized as involving public concerns").

but instead were limited to 'the pecuniary interests of the private parties involved.'" *Gaskamp*, 596 S.W.3d at 479 (quoting *Creative Oil & Gas*, 591 S.W.3d at 136).

The same is true here. Appellants' alleged communications related to their business relationship with each other and to Allied's employment of Marrujo, allegedly in violation of the non-compete agreement. These are "purely private matters" that cannot "reasonably be characterized as involving public concerns." *See Creative Oil & Gas*, 591 S.W.3d at 135–36. These communications have no "relevance to the broader marketplace" and no "relevance to a public audience of potential buyers or sellers," but instead were made "with a limited business audience concerning a private contract dispute." *Id.* at 136.

Indeed, the only parties affected by Allied's employment of Marrujo are Allied, Marrujo, and Wisenbaker, and the only parties whose pecuniary interests are affected are Allied, Marrujo, and Wisenbaker. *Id.* at 137 ("A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words.").[4]

---

[4] *See Newpark Mats & Integrated Servs., LLC v. Cahoon Enters., LLC*, No. 01-19-00409-CV, 2020 WL 1467005, at *8–9 (Tex. App.—Houston [1st Dist.] Mar. 26, 2020, no pet.) (concluding that dispute at issue was private business dispute between two companies that was not relevant to broader marketplace and, therefore, communications concerning dispute did not implicate matter of public concern and TCPA did not apply).

This is equally true for appellants' alleged solicitation of Wisenbaker's customers and Marrujo's alleged request to Garcia for confidential information relating to Wisenbaker's customers. Just like the communications at issue in *Gaskamp*, these alleged communications "do not have relevance to a public audience of buyers or sellers but instead [are] limited to 'the pecuniary interests of the private parties involved.'" *Gaskamp*, 596 S.W.3d at 479.[5] As such, they do not involve "a matter of public concern" under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(7)(E).

## D. Exercise of the Right of Association

Along similar lines, appellants also contend Wisenbaker's allegations are based on the "exercise of [their] right of association." When this suit was filed, the TCPA defined the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2).

Appellants claim their exercise of the right of association is implicated by Wisenbaker's admission that it sued appellants because Marrujo continues to be

---

[5] *See also Griffith Techs., Inc. v. Packers Plus Energy Servs., (USA), Inc.*, No. 01-18-00674-CV, 2020 WL 4354713, at *6 (Tex. App.—Houston [1st Dist.] July 30, 2020, no pet.) (mem. op.) (concluding that plaintiffs' communications regarding development and promotion of competing business enterprise did not have any public relevance "beyond the pecuniary interest of the private parties" and, thus, defendants' counterclaims were not related to plaintiffs' exercise of right of free speech).

employed by Allied. According to appellants, "Allied's hiring of Marrujo to work in its countertop business and the Appellants' ongoing business relationship necessarily require communications . . . between individuals who joined together to collectively express, promote, pursue, or defend common interests." Appellants further claim that Wisenbaker's allegations implicate their exercise of the right of association because the allegations imply that Marrujo shared Wisenbaker's confidential information with Allied, resulting in the "defection of Wisenbaker customers to Allied."

However, in *Gaskamp*, this Court concluded that "with respect to the pre-amendment version of the TCPA, the proper definition of 'common' in the phrase 'common interests' [as used in "exercise of the right of association"] is 'of or relating to a community at large: public.'" 596 S.W.3d at 476. In *Gaskamp*, the plaintiff alleged that former employees had jointly formed a new business venture, misappropriated trade secrets, and conspired to commit related torts to enrich themselves. *See id.*

Because the *Gaskamp* allegations "involved misappropriating . . . trade secrets and conspiring to commit related torts, benefit[ing] only the five alleged tortfeasors," and the nonmovant's pleading did not allege any "public or community interests," the Court held that the movants did not meet their burden of showing, by a

17

preponderance of the evidence, that the nonmovant's suit was based on, related to, or was in response to the movants' exercise of the right of association. *Id.*

The same is true here. Wisenbaker's claims are based on appellants' business relationship, which is allegedly in violation of Marrujo's non-compete agreement with Wisenbaker, as well as Marrujo's alleged sharing and communication of Wisenbaker's confidential information with Allied. No "public or community interest" is alleged, but instead only private interests that benefit the private parties involved in this business relationship. *See id.*[6]

As such, we conclude that appellants did not meet their burden of showing by a preponderance of the evidence that Wisenbaker's claims are based on, related to, or are in response to their "exercise of the right of association" under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2).

## E. Exercise of the Right to Petition

Appellants next argue that the TCPA applies to Wisenbaker's lawsuit because it implicates Marrujo's "exercise of the right to petition." The TCPA defines the "[e]xercise of the right to petition" as including, among other things,

---

[6]     *See also Griffith Techs.*, 2020 WL 4354713, at *5 (holding counterclaims were not related to exercise of right of association because they were based on the parties' joint conduct in developing and promoting a competing business enterprise); *Newpark Mats & Integrated Servs.*, 2020 WL 1467005, at *7 ("Newpark's association (internally and externally) to express, promote, and pursue a common interest, namely, to form a competing business, is not a public or community interest; it is a private interest that benefits only the private parties involved in the intended business venture.").

18

"a communication in or pertaining to . . . a judicial proceeding" and "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." *Id.* § 27.001(4)(A)(i), (E).

Based on our review of the parties' pleadings and evidence in the light most favorable to Wisenbaker as the nonmovant, as is required, we conclude that appellants have failed to carry their burden to demonstrate that Wisenbaker's claims in this lawsuit are based on, related to, or are in response to Marrujo's exercise of her right to petition by filing her FLSA lawsuit. *See id.* §§ 27.003(a), 27.005(b), 27.006(a); *see also Schimmel*, 438 S.W.3d at 855–56.

In this regard, the factual basis of Wisenbaker's breach of contract and tortious interference claims are expressly based on, related to, and in response to alleged conduct by Marrujo and Allied that occurred outside the context of Marrujo's FLSA lawsuit. Among the complained of conduct, Wisenbaker alleges that after it fired Marrujo, it learned that she was working for Allied, "a direct competitor of Wisenbaker," in the Houston area, "performing the same or similar services to those she performed as an ISR for Wisenbaker." Wisenbaker alleged that this, as well as Marrujo's failure to disclose to Wisenbaker that she was working for Allied, violated her non-compete obligations.

19

Wisenbaker additionally alleged that "Allied continues to employ Marrujo in the Houston area in a position in which she is performing the same or similar services to those she performed as an ISR for Wisenbaker," despite being aware of Marrujo's non-compete agreement. In its petition, Wisenbaker makes no mention of Marrujo's FLSA lawsuit, any of the facts related to the DOL's investigation into Wisenbaker's overtime payment practices, or Marrujo's involvement in that investigation.[7]

Seeming to acknowledge that Wisenbaker's petition makes no mention of Marrujo's FLSA lawsuit, appellants direct this Court to the timing of this lawsuit to argue that Wisenbaker only began threatening legal action, and eventually filed suit, *after* it was served with Marrujo's federal FLSA lawsuit. Appellants offer the following timeline as evidence that Wisenbaker's lawsuit was intended as harassment and retaliation for Marrujo's FLSA lawsuit:

- August 2017: DOL begins investigating Wisenbaker's misclassification of employees' over-time eligibility status. Marrujo cooperates with the DOL in its investigation.

- October 19, 2017: Wisenbaker terminates Marrujo's employment, "shortly after [Marrujo] report[ed] to Human Resources . . . [that she] felt it was improper for [her] supervisor to pressure employees to disclose who was cooperating with the [DOL]."

---

[7] *See Darnell v. Rogers*, 588 S.W.3d 295, 302 (Tex. App.—El Paso 2019, no pet.) (concluding attorney's petition against former client was not based on or in response to former client's grievance filed with state bar because attorney's claims were "based on alleged false, defamatory, or disparaging statements made by [former client] to various individuals, including but not limited to Court personnel," and attorney's petition made "no mention of a grievance or any other communication with the State Bar of Texas").

- January 2018: Marrujo begins working for Allied.

- June 1, 2018: Marrujo receives a letter from Wisenbaker disclaiming all wrongdoing related to the DOL investigation "but agreeing to pay Marrujo an amount certain in exchange for a full release of any and all claims."

- June 15, 2018: Marrujo declines to accept Wisenbaker's offer and files her FLSA lawsuit in federal court.

- June 22, 2018: Wisenbaker is served with Marrujo's FLSA lawsuit.

- June 29, 2018: Wisenbaker sends correspondence to Marrujo and Allied stating that Wisenbaker had "strong reason to believe" Marrujo was working for Allied "performing similar duties to [her] duties during [her] employment with Wisenbaker" in violation of her non-compete agreement.

- July 3, 2018: Marrujo responds that she did not violate her non-compete agreement or disclose Wisenbaker's confidential information.

- July 5, 2018: Wisenbaker sends a second letter to Marrujo claiming that her provisions of "services to Allied in the Houston metropolitan area that are similar to the services you provided to Wisenbaker is a direct violation of the non-compete [agreement]" and threatening legal action if Marrujo did not respond with evidence that she was not in violation of her non-compete agreement.

- August 15, 2018: Wisenbaker files the underlying lawsuit.

But the above-cited evidence is at best only circumstantial as to this issue. Although we may properly consider circumstantial evidence in a TCPA review, *see Lipsky*, 460 S.W.3d at 591, the inferences drawn from such evidence must be reasonable. *Beving v. Beadles*, 563 S.W.3d 399, 408 (Tex. App.—Fort Worth 2018, pet. denied).

21

The inferences that appellants ask us to draw from the above timeline are necessarily speculative and conclusory. As noted above, Wisenbaker's causes of action against appellants arise out of facts occurring *before* Marrujo filed her FLSA lawsuit.[8] For instance, Marrujo was employed by Wisenbaker between 2014 and 2017, during which time she signed the non-compete agreement at issue in the underlying lawsuit. Wisenbaker terminated Marrujo on October 19, 2017.

Wisenbaker alleges in its petition that Marrujo contacted Garcia on June 14, 2018, which is the day before Marrujo filed her FLSA lawsuit and more than a week before Wisenbaker was served with that lawsuit. During that conversation, Marrujo allegedly acknowledged that she was working for a competitor. Finally, Marrujo admits that she began working for Allied in January 2018, over six months before Wisenbaker contacted appellants regarding Marrujo's alleged violations of the non-compete agreement and over eight months before Wisenbaker filed its lawsuit.

Appellants' argument that there is "little doubt" Wisenbaker's lawsuit was filed in response to Marrujo's FLSA lawsuit is also speculative and conclusory. It

---

[8] *See Pierce v. Stocks*, No. 01-18-00990-CV, 2019 WL 3418513, at *5 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.) (rejecting argument that underlying lawsuit filed by surgeon against former administrator was filed in response to administrator's earlier-filed federal lawsuit because claims were premised on conduct that occurred well before administrator filed her federal lawsuit); *Beving v. Beadles*, 563 S.W.3d 399, 408 (Tex. App.—Fort Worth 2018, pet. denied) (concluding that defendant's argument that third-party petition was based on her affidavit and deposition testimony was speculative because causes of action in third-party petition arose out of facts occurring well before her affidavit and deposition).

22

requires this Court to assume that the underlying lawsuit must have been filed in response to the FLSA lawsuit simply because it was asserted subsequent in time. But "[t]here are myriad reasons for deciding if and when to bring a legal action against a person." *Beving*, 563 S.W.3d at 408.

For example, Wisenbaker has averred that it sought to enforce the non-compete agreement through its June and July cease-and-desist letters and, ultimately, this lawsuit because it discovered that Marrujo was working for a competitor after she contacted Garcia on June 14, 2018. And Wisenbaker later confirmed this fact after receiving the declaration from Ortiz in July 2018 that Marrujo was indeed "performing services for Allied in the Houston metropolitan statistical area that are similar to the services she provided to Wisenbaker as an ISR." This constitutes a more than plausible reason for the filing of Wisenbaker's underlying lawsuit.[9]

---

[9] *See Pierce*, 2019 WL 3418513, at *5 (rejecting argument that underlying lawsuit filed by surgeon against former administrator was filed in response to administrator's earlier-filed federal lawsuit because "[m]erely arguing *post hoc ergo propter hoc* will not satisfy the preponderance-of-the-evidence standard to demonstrate applicability of the TCPA, particularly where, as here, the claims are premised on conduct that occurred well before [administrator] filed her federal lawsuit"); *Beving*, 563 S.W.3d at 408 (concluding mere fact that law partners waited until after comptroller's affidavit and deposition before naming her as third-party defendant did not satisfy standard under TCPA to show that third-party claims were in response to comptroller's exercise of right to petition, in part, because law partners obtained additional information in the interim which may have led to filing of third-party claims against comptroller).

Finally, appellants argue it is reasonable to conclude that Wisenbaker's claims were "retaliatory in nature" and filed in response to her FLSA lawsuit because Wisenbaker sued appellants, "but not the twenty-plus other ex-employees who work[ed] for Wisenbaker competitors." According to appellants, the only difference is that Marrujo sued Wisenbaker and the other former employees did not. This conclusion is likewise based on mere speculation.

Appellants have not pointed to any probative evidence as to why Wisenbaker chose not to pursue lawsuits against the unidentified "twenty-plus" former employees. And even if appellants had such evidence, it would not equate to probative evidence that Wisenbaker chose to pursue a lawsuit *against appellants* simply because of Marrujo's FLSA lawsuit.

As a result, appellants' assertion that the lack of other lawsuits means Wisenbaker's lawsuit against appellants somehow relates to Marrujo's FLSA lawsuit is nothing more than mere speculation and surmise. *See Darnell*, 588 S.W.3d 295, 302 (Tex. App.—El Paso 2019, no pet.) (concluding that client's affidavit statements that he "knew" former lawyer's lawsuit "must be in relation to the grievance," and that "only conclusion" is that former lawyer "probably" filed suit as

preemptive measure, were "mere speculation," had "no probative value" and did "not constitute any evidence").[10]

Indeed, what appellants really ask is that we "ignore the factual predicate as alleged in [Wisenbaker's] petition and instead engage in pure speculation . . . in order to divine that [Wisenbaker] has artfully pleaded causes of action against [appellants] to retaliate and punish" them for Marrujo's FLSA lawsuit. *Beving*, 563 S.W.3d at 408. We cannot engage in such a speculative exercise. We thus conclude, in accordance with the controlling standard of review, that appellants have also failed to demonstrate by a preponderance of the evidence that Wisenbaker's claims are based on, related to, or are in response to Marrujo's "exercise of the right to petition" under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a).

As a result, we hold that the TCPA does not apply to Wisenbaker's lawsuit. This holding is buttressed by the fact that appellants have not raised any issue or argument on appeal challenging the trial court's findings of fact and conclusions of law stating "that [this] suit was not brought to deter or prevent the [appellants] from exercising constitutional rights and was not brought: (1) for an improper purpose; (2) to harass or to cause unnecessary delay; or (3) to increase the cost of litigation."

---

[10] *Darnell*, 588 S.W.3d at 302 (rejecting client's contention that former lawyer's delay in serving client with lawsuit was evidence that lawsuit was filed in response to client's right to petition because there was "no *evidence* of the reason for the delay" and client's "speculation that the delay somehow relates to his grievance does not constitute any such evidence").

*See Trammell v. Trammell*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("The general rule is that if the trial court's findings of fact are not challenged by a point of error on appeal, they are binding upon the appellate court."); *see also* TEX. R. APP. P. 38.1(f). Accordingly, for all of the reasons above, the trial court did not err in denying appellants' motion to dismiss under the TCPA.

We overrule appellants' first, second, third, and fourth issues.[11]

**Wisenbaker's Request for Attorney's Fees**

In the sole issue in its cross-appeal, Wisenbaker argues that the trial court erroneously denied its request for attorney's fees and costs under the TCPA because appellants' motion to dismiss was "frivolous or solely intended to delay."

"If the court finds that a motion to dismiss filed under [the TCPA] is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party." TEX. CIV. PRAC. & REM. CODE § 27.009(b). We review a trial court's decision to award attorney's fees and costs for an abuse of

---

[11] Given our conclusion that the TCPA does not apply to Wisenbaker's lawsuit, we need not address appellants' remaining issues challenging whether Wisenbaker failed to meet its burden to prove a prima facie case, whether the evidence relied on by Wisenbaker in support of its response to the motion to dismiss should have been stricken, and whether their motion to dismiss was timely and not preempted. *See, e.g.*, *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 856 n.6 (Tex. App.—Austin 2018, pet. denied) ("Because we hold that the TCPA does not apply, we do not reach the second step in the TCPA analysis of whether [the nonmovant] met its burden to prove a prima facie case."); *see also* TEX. R. APP. P. 47.1.

discretion. *Keane Frac, LP v. SP Silica Sales, LLC*, 608 S.W.3d 416, 432 (Tex. App.—Houston [1st Dist.] 2020, no pet.).[12]

The TCPA does not define "frivolous." *Keane Frac*, 608 S.W.3d at 432. Courts that have addressed this issue have noted that the "common understanding" of the word "contemplates that a claim or motion will be considered frivolous if it has no basis in law or fact and lacks a legal basis or legal merit." *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 913 (2002), and BLACK'S LAW DICTIONARY 739 (9th ed. 2009)); *see Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 243 (Tex. App.—Eastland 2019, no pet.) (following *Sullivan*); *Lei v. Nat. Polymer Intl'l Corp.*, 578 S.W.3d 706, 717 (Tex. App.—Dallas 2019, no pet.) (same).

Before filing a motion to dismiss under the TCPA, "the movant must evaluate whether there is a legal basis to assert that the nonmovant's legal action is based on, related to, or in response to the movant's exercise of a right protected by the statute," which "necessarily involves an analysis of the specific communications underlying the nonmovant's claims." *Caliber Oil & Gas*, 591 S.W.3d at 243. The fact that a

---

[12] *See also Lei v. Nat. Polymer Int'l Corp.*, 578 S.W.3d 706, 717 (Tex. App.—Dallas 2019, no pet.) ("An attorney's fees award under section 27.009(b) is *entirely discretionary* and requires the trial court to find the motion was frivolous or solely intended to delay." (emphasis added)).

TCPA motion to dismiss is ultimately denied is not sufficient, standing alone, to support a finding that the motion was frivolous. *Id.* at 244.

Based on the unclear state of the law at the time appellants moved to dismiss in October 2018, we conclude there was at least a colorable basis in law and fact for appellants' motion. This Court recently addressed a similar issue and reversed a trial court's finding that the defendant's TCPA motion was frivolous at the time it was filed because the Texas Supreme Court had not yet decided *Creative Oil & Gas*, "which made it clear that the TCPA does not apply to private business disputes that affect only the fortunes of the parties involved in the dispute." *Keane Frac*, 608 S.W.3d at 433.

We noted in *Keane Frac* that, before *Creative Oil & Gas*, courts of appeals had construed the TCPA broadly to apply to private and internal communications, breach of contract actions, and fraud actions, although the Dallas Court of Appeals had begun to limit the scope of "matters of public concern." *Id.* (collecting cases). "Due to the expansive construction of the TCPA and the uncertainty among the intermediate courts of appeals as to whether the TCPA applied to private business disputes—a matter that was not settled until the Texas Supreme Court's opinion in *Creative Oil & Gas*," we declined to hold that the motion to dismiss in *Keane Frac* had no basis in law or fact. *Id.*

We likewise conclude here that because appellants' motion to dismiss was filed before the Texas Supreme Court's decision in *Creative Oil & Gas*, and before our en banc decision in *Gaskamp*, there was at least a colorable basis for appellants' motion to dismiss. *See Sullivan*, 551 S.W.3d at 857 ("a claim or motion will be considered frivolous if it has *no basis in law or fact* and lacks a legal basis or legal merit" (emphasis added)). Accordingly, we hold that the trial court did not err in denying Wisenbaker's request for attorney's fees and costs under section 27.009 of the TCPA.

We overrule Wisenbaker's sole issue.

### Conclusion

Having concluded that the trial court did not err by denying either appellants' motion to dismiss under the TCPA or Wisenbaker's request for attorney's fees and costs under the TCPA, we affirm the trial court's order.

Terry Adams
Justice

Panel consists of Chief Justice Radack and Justices Hightower and Adams.