

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00413-CV

———————————————

SADIE WELDON, Appellant

V.

THE LILITH FUND FOR REPRODUCTIVE EQUITY, Appellee

On Appeal from the 271st District Court
Jack County, Texas
Trial Court No. 22-03-032

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Before the United States Supreme Court overruled *Roe v. Wade* in the summer of 2022, abortion-assistance group The Lilith Fund for Reproductive Equity made it known that in October 2021 it had deliberately flouted a new Texas law prohibiting abortion after cardiac activity is detected—the law known as SB 8, or the Heartbeat Act—by helping at least one pregnant woman obtain an abortion. To gather information about Lilith Fund's admitted SB 8 violation, Appellant Sadie Weldon petitioned for a pre-suit deposition of Appellee Lilith Fund's deputy director under Rule 202 of the Texas Rules of Civil Procedure.[1] *See* Tex. R. Civ. P. 202.

While Weldon's Rule 202 petition was pending, Lilith Fund separately sued Weldon seeking declaratory judgments that SB 8 is unconstitutional and seeking to temporarily enjoin Weldon from pursuing any judicial proceedings against it in the interim and seeking an anti-suit injunction against the Rule 202 proceeding. Weldon appeals the trial court's denial of her motion to dismiss Lilith Fund's lawsuit under the Texas Citizens Participation Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011; *id.* § 51.014(a)(12) (allowing appeal from interlocutory order that denies a TCPA

---

[1]To the extent that Lilith Fund practically invited a lawsuit, we're unsure why Weldon opted to proceed with a Rule 202 petition rather than simply suing, learning during discovery who else might have been involved, and then joining those people as additional defendants. As Lilith Fund pointed out in the trial court, there was not "any debate" that it had "violate[d] the technical terms of SB 8" "at least on one occasion."

motion). Because we conclude that the TCPA does not apply to Lilith Fund's action, we will affirm.

## Background

In 2021, the Texas Legislature enacted what has been described as an "unusual" and "unprecedented" statute, Senate Bill 8, adding Subchapter H to Chapter 171 of the Texas Health and Safety Code. *See* Act of May 13, 2021, 87th Leg., R.S., ch. 62, 2021 Tex. Gen. Laws 125, 125–31 (codified at Tex. Health & Safety Code §§ 171.201–.212); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 141 S. Ct. 2494, 2496 (2021) (order denying injunctive relief) (Roberts, C.J., dissenting) (describing SB 8 as "statutory scheme" that "is not only unusual, but unprecedented" and noting that "[t]he desired consequence appears to be to insulate the State from responsibility for implementing and enforcing the regulatory regime"). Referred to as the Heartbeat Act, SB 8 prohibits abortions after fetal cardiac activity is detected within the gestational sac, effectively banning abortions roughly six weeks following a human's conception. *See* Tex. Health & Safety Code Ann. § 171.204(a).

But what's unique is that SB 8 can be enforced only by private citizens through civil litigation: state officials cannot enforce the law, and those who violate SB 8 are not subject to criminal sanctions or administrative penalties. *Id.* §§ 171.207(a) (stating that Subchapter H is "enforced exclusively through the private civil actions described

3

in Section 171.208"), 171.208 (describing those private civil actions).[2] A citizen who succeeds with an SB 8 claim can recover injunctive relief, statutory damages in an amount of "not less than $10,000 for each abortion that the defendant performed or induced [or aided or abetted] in violation of this subchapter," and costs and attorney's fees. *Id.* § 171.208(b).

About a year after SB 8's enactment, Texas abortion providers shuttered their facilities altogether when—unrelated to SB 8—the United States Supreme Court decided *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 142 S. Ct. 2228 (2022) (overruling *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705 (1973), and its progeny, and returning to the 50 states whether and how to address the abortion issue on a state-by-state basis). Abortionists have quit doing business in Texas because

---

[2]The Heartbeat Act authorizes a civil action against "any person" who "performs or induces an abortion in violation of this subchapter," "knowingly engages in conduct that aids or abets the performance or inducement of an abortion, including paying for or reimbursing the costs of an abortion through insurance or otherwise, if the abortion is performed or induced in violation of this subchapter," or "intends to engage in" that prohibited conduct. Tex. Health & Safety Code Ann. § 171.208(a). This subchapter applies only to abortions performed by a Texas-licensed physician. *See id.* §§ 171.203–.205; *see also id.* § 171.201(4) (defining "physician"). Groups such as the Lilith Fund are, legally, free to help pregnant women travel outside Texas for an abortion, and as Weldon's counsel has recognized in a different case, the Act does not apply to so-called "self-managed" abortions. *See* Petitioner's Reply to the Van Stean Respondents[' Response to Petition for Review] at 2, *Tex. Right to Life v. Van Stean*, No. 23-0468 (Tex. Nov. 20, 2023) ("[I]llegal self-managed abortions do not violate SB 8 because the statute applies only to abortions performed by Texas-licensed physicians.").

elective abortions are now criminalized,[3] so SB 8 is mostly a footnote,[4] a recent artifact of a time when abortion was still considered a federal constitutional right and upon which Texas sought to impose the strictest (and most creative) possible limits under the *Roe, et al.* regime. Still, despite SB 8's reduced utility, at the very least Weldon and others do have potential claims to pursue because of the statute's four-year limitations period. *See* Tex. Health & Safety Code Ann. § 171.208(d).

### Relevant Timeline Surrounding SB 8 and This Case

**09/01/21**   SB 8 takes effect.

**09/09/21**   By this date, numerous abortion-facilitating individuals and entities, including Lilith Fund, have separately sued Texas Right to Life (TRL) and its legislative director, John Seago, challenging SB 8's constitutionality and seeking declaratory and injunctive relief; the 14 total cases are later assigned to Judge David Peeples, sitting by special assignment of the Texas Multi-District Litigation Panel as the judge of the pretrial court for the SB 8 MDL (Cause No. D-1-GN-21-004179).[5]

---

[3]With limited exceptions, performing or inducing an abortion is a felony. *See* Tex. Health & Safety Code Ann. §§ 170A.001–.007.

[4]*See* Howard M. Wasserman & Charles W. "Rocky" Rhodes, *Solving the Procedural Puzzles of the Texas Heartbeat Act and Its Imitators: New York Times v. Sullivan As Historical Analogue*, 60 Hous. L. Rev. 93, 97 (2022) ("S.B. 8 used the threat of costly private litigation and crippling civil liability to chill then-constitutionally protected reproductive[-]freedom activities. *Dobbs* obviates the need for such indirect regulation; states can enforce now-constitutionally valid abortion bans through government-enforced civil and criminal penalties.").

[5]TRL and Seago initiated the MDL process.

*See* Order of Multidistrict Litig. Panel, *In re Tex. Heartbeat Act Litig.*, No. 21-0782 (Tex. J.P.M.L. Oct. 14, 2021).[6]

**12/09/21**    Judge Peeples enters an order denying TRL's and Seago's TCPA motion and granting a partial summary judgment declaring that SB 8 violates both the Texas and federal constitutions. Although Judge Peeples states that he will "sign an order of severance and will ensure that the issues addressed in this Order are promptly appealable to the appellate courts," TRL and Seago almost immediately file an interlocutory appeal of the TCPA-motion denial,[7] thus staying further proceedings and delaying review of whether SB 8 is or is not constitutional.

**01/26/22**    Weldon files her Rule 202 petition against Lilith Fund in Jack County District Court (Cause No. 22-01-014).

**03/15/22**    Lilith Fund files its declaratory-judgment and anti-suit-injunction petition—this case—also in Jack County District Court (Cause No. 22-03-032).[8]

**05/16/22**    Weldon moves to dismiss under the TCPA and Rule 91a of the Texas Rules of Civil Procedure and includes a plea in abatement.

**08/08/22**    In Cause Number 22-01-014, the trial court denies Weldon's Rule 202 petition by email.

---

[6]TRL was the target defendant in these cases because its website described SB 8 and invited members of the public to submit evidence of statutory violations, thus causing the pretrial-MDL plaintiffs to complain, in essence, that TRL and Seago were encouraging people to file SB 8 lawsuits or to provide information to that end.

[7]Our sister court in Austin affirmed the denial of TRL and Seago's TCPA motion several months after Weldon's case was submitted to our panel. *Tex. Right to Life v. Van Stean*, No. 03-21-00650-CV, 2023 WL 3687408, at *1 (Tex. App.—Austin May 26, 2023, pet. filed) (mem. op.). We discuss—and agree with—that holding in a later section of this memorandum opinion.

[8]The next day, Lilith Fund transferred both its suit and Weldon's Rule 202 petition as tag-along cases to the MDL pretrial court. In May 2022, Judge Peeples sent this case (and the Rule 202 petition) back to Jack County after concluding, for reasons not important here, that they did not qualify as tag-along cases in the MDL proceeding.

**09/06/22**     The trial court holds a hearing on Weldon's TCPA and Rule 91a motions and her plea in abatement, but never enters any orders.[9]

**10/07/22**     Weldon's TCPA motion is overruled by operation of law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.008(a) (providing that if trial court doesn't rule within 30 days of the hearing, "the motion is considered to have been denied by operation of law and the moving party may appeal").

**10/25/22**     Weldon timely appeals the TCPA-motion denial.

### Issues Presented

Weldon raises six issues, which we paraphrase and give short answers to:

1. Does the TCPA apply to Lilith Fund's case? That is, did Lilith Fund file this action based on or in response to Weldon's exercise of the rights of free speech, to petition, or of association? *No; the TCPA does not apply.*

2. Should Lilith Fund's declaratory-judgment action be dismissed because the constitutional issues it raised could have been adjudicated in Weldon's then-pending Rule 202 proceeding? *We do not reach this issue because it is not necessary to final disposition of this appeal. See* Tex. R. App. P. 47.1 (requiring appellate court to hand down written opinion disposing of every issue necessary to final disposition of appeal); *Newstream Hotels & Resorts, LLC v. Abdou*, No. 02-21-00343-CV, 2022 WL 1496537, at *4 (Tex. App.—Fort Worth May

---

[9]At the hearing, Weldon's counsel stated, "Now, we understand your Honor has denied the request for depositions under Rule 202, but the appellate proceedings have not yet concluded and a denial of the Rule 202 petition can be subject to mandamus in the Court of Appeals. Ms. Weldon has not yet exhausted her appellate options on the Rule 202." Although Weldon made this point well over a year ago, she never sought mandamus relief from us.

12, 2022, pet. denied) (mem. op.) (declining to reach other appellate issues after holding that TCPA did not apply to plaintiff's claims).

3. Has Lilith Fund, through this declaratory-judgment action, wrongly tried to deprive Weldon, the "real plaintiff," of her right to choose the time and place of suit? *We do not reach this issue because it is not necessary to final disposition of this appeal. See* Tex. R. App. P. 47.1; *Newstream*, 2022 WL 1496537, at *4.

4. Should the trial court have abated Lilith Fund's suit in deference to Weldon's first-filed Rule 202 petition, under principles of dominant jurisdiction? *We do not reach this issue because it is not necessary to final disposition of this appeal, see* Tex. R. App. P. 47.1; *Newstream*, 2022 WL 1496537, at *4, and because the trial court never ruled on Weldon's plea in abatement.*[10]

5. Does Lilith Fund's request for an anti-suit injunction satisfy any of the four circumstances laid out in *Golden Rule Insurance Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996)? *We do not reach this issue because it is not necessary to final disposition of this appeal. See* Tex. R. App. P. 47.1; *Newstream*, 2022 WL 1496537, at *4.

---

[10]In any event, "[a]n abatement order is not one of the specific types of interlocutory orders that the legislature has designated as appealable." *State v. BFI Waste Servs. of Tex., LP*, No. 03-10-00504-CV, 2011 WL 1086585, at *1 (Tex. App.—Austin Mar. 23, 2011, pet. denied) (mem. op.). But an interlocutory order denying a plea in abatement can be appealed by permissive appeal, *see Lee v. GST Transp. Sys., LP*, 334 S.W.3d 16, 17–18 (Tex. App.—Dallas 2008, pet. denied) (noting that appeal reached appellate court through mechanisms of Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d))—a situation we don't have here.

6. Has Lilith Fund produced clear and specific evidence of a prima facie case for any of its constitutional attacks on SB 8? *Based on our answer to Issue One, we need not reach this issue. See* Tex. R. App. P. 47.1; *Newstream*, 2022 WL 1496537, at *4.

**Discussion**

Despite the wide-ranging nature of Weldon's issues, we keep front of mind that they reach us only in the context of a TCPA motion's denial: if we do not conclude in the first instance that Lilith Fund's legal proceeding was "based on or [was] in response to [Weldon's] exercise of the right of free speech, right to petition, or right of association," Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a), we have no legal anchor from which to paddle out and explore anything else. *See id.* § 51.014(a)(12) (allowing appeal from interlocutory order denying TCPA motion).

Before explaining why the TCPA does not apply—a conclusion that compels an affirmance—we do note Lilith Fund's appellate about-face. In the trial court, it argued both in its briefing and at the TCPA hearing for the conclusion we reach. Now, though, it assumes that the TCPA applies: "Although Lilith Fund argued in the trial court that the TCPA does not apply to its claims, for the limited purpose of this appeal it assumes that the TCPA applies and the trial court determined that Ms. Weldon met her Step One Burden."

Appellate concessions on legal matters do not bind us. *Reid v. UDR Tex. Props. LLC*, No. 02-15-00108-CV, 2016 WL 7448362, at *3 n.9 (Tex. App.—Fort Worth Dec. 28, 2016, no pet.) (mem. op. on reh'g) (noting that court was not bound by

9

concession that counterclaim was time-barred but "must independently determine as a matter of law whether the judgment contained reversible error"); *Haas v. Voigt*, 940 S.W.2d 198, 201 n.1 (Tex. App.—San Antonio 1996, writ denied) (noting that "parties cannot concede a question of law necessary to the proper disposition of a point of error"). We will thus decide the TCPA's applicability for ourselves.

**Standard of review; TCPA's purpose and framework**

Whether the TCPA applies in a given case is an issue of statutory construction that we review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *see also Adams v. Starside Custom Builders LLC*, 547 S.W.3d 890, 897 (Tex. 2018) (noting that court "[has] decided whether communications are matters of public concern under a de novo standard of review, suggesting that the determination is one of law").

As its language tells us, the TCPA's purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017). To fully effectuate this purpose and intent, we must construe the TCPA "liberally." Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b). To that end, through a motion-to-dismiss procedure, a defendant who claims that a plaintiff has filed a meritless suit "in response to the defendant's proper exercise of a constitutionally protected right [may] seek dismissal of the underlying

10

action, attorneys' fees, and sanctions at an early stage in the litigation." *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a)). The TCPA cautions, though, that it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions," such as the declaratory-judgment act. *Id.* at 200–01 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.011); *see also Gilani v. Rigney*, No. 02-21-00314-CV, 2022 WL 714700, at *4 (Tex. App.—Fort Worth Mar. 10, 2022, pet. denied) (mem. op.) ("The TCPA does not create a right for a TCPA movant to usurp the UDJA protections, which are given to anyone whose own rights are affected by a statute.").

We take up to three analytical steps when reviewing a trial court's ruling on a TCPA motion:

1. the movant (here, Weldon) must show that the TCPA properly applies to the legal action against her—that is, that the action "is based on or is in response to" her exercise of protected rights;

2. if the movant satisfies that burden, the nonmovant (Lilith Fund) must establish "by clear and specific evidence a prima facie case for each essential element" of its claim; and

3. assuming that the nonmovant satisfied step two, the movant can then try to establish "an affirmative defense or other grounds" on which she is "entitled to judgment as a matter of law."

*See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b), (c), (d). Self-evidently, our inquiry ends if a TCPA movant cannot meet the first-step burden. *See TotalGen Servs., LLC v. Thomassen Amcot Int'l, LLC*, No. 02-20-00015-CV, 2021 WL 210845, at *2 n.3 (Tex.

App.—Fort Worth Jan. 21, 2021, no pet.) (mem. op.) (noting that "because we conclude that TotalGen failed to meet its burden on the first step, we do not reach" the next one (citing Tex. R. App. P. 47.1)).

We examine the pleadings in the light most favorable to the nonmovant, *see NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 445 (Tex. App.—Fort Worth 2023, pets. filed), "favoring the conclusion that the [nonmovant's] claims are not predicated on protected expression," *Newstream*, 2022 WL 1496537, at *2 (citing *Beving v. Beadles*, 563 S.W.3d 399, 407 (Tex. App.—Fort Worth 2018, pet. denied)); *see Dolcefino*, 540 S.W.3d at 199. "Implicit in this analysis is that we do not blindly accept" a movant's attempts to characterize the nonmovant's claims as implicating protected expression. *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd).

**Weldon's TCPA motion falters at Step One**

Weldon argues that Lilith Fund's lawsuit was a direct response to her Rule 202 petition and thus was a legal action that "is based on or is in response to" her "exercise of the right of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). We disagree.

In a similar case from our sister court in Austin on appeal from Judge Peeples's December 2021 order denying their TCPA motion, TRL and Seago argued that Planned Parenthood and the Van Stean appellees had filed their lawsuits for declaratory and injunctive relief based on and in response to TRL's "publication of a

website that describes SB 8 and invites members of the public to submit evidence of statutory violations." *Van Stean*, 2023 WL 3687408, at *4. TRL argued that dismissal was warranted because its publishing the website in question was an activity covered by the TCPA's broadly defined exercise of the rights of free speech, to petition, and of association. *Id.*

That argument failed. The Austin court noted that the abortion providers' and assisters' suits were filed

> to challenge the constitutionality of SB 8 and to enjoin Texas Right to Life from enforcing an unconstitutional statute, not to stop Texas Right to Life from any lawful activity that is protected by the TCPA. They assert that even if speech or political opinions are incidentally involved in the underlying factual allegations in their petitions, "the TCPA offers no protection for an unlawful scheme to deprive others of their constitutional rights."

*Id.* at *5. Agreeing with the appellees, the court took its reasoning from two Houston decisions, *Dolcefino* and *Choudhri v. Lee*, No. 01-20-00098-CV, 2020 WL 4689204 (Tex. App.—Houston [1st Dist.] Aug. 13, 2020, pet. denied) (mem. op.), with which we also agree.

In *Choudhri*, the declaratory-judgment plaintiff, Lee, sought a declaration construing the parties' alternative-dispute-resolution agreement after they kept engaging in recurrent litigation over their business dealings. *Id.* at *1–2. Choudhri moved to dismiss under the TCPA, arguing that Lee's declaratory-judgment action was based on or in response to Choudhri's exercise of his right to petition. *Id.* at *2. Rejecting that position, the court of appeals held that the TCPA did not apply because

Lee's action sought "a determination of the legal principles that the parties should apply in resolving their various legal disputes" and did not seek to limit Choudhri's right to petition or otherwise participate in government. *Id.* at *3. Moreover, "Choudhri's argument that the TCPA is implicated because Lee's claim affects his legal rights is a non sequitur—all claims filed in court seek to affect a party's legal rights." *Id.*

Similar reasoning appeared in *Dolcefino*, in which a nonprofit ambulance service sought declarations that the Texas Business Organizations Code did not require it to produce certain financial information to Dolcefino, a dogged investigative reporter who had subjected the ambulance service to repeated document requests under the Code. 540 S.W.3d at 196–97. Dolcefino filed a TCPA dismissal motion in which he claimed that the ambulance service's suit "sought to curtail his constitutional right to free speech." *Id.* at 197. But the court of appeals disagreed: "CCEMS's pleadings sought a declaration from the trial court concerning its *own* conduct, i.e., what its duties and obligations were upon its receipt of requests for information made pursuant to Business Organizations Code section 22.353. The relief sought by CCEMS did not seek to prohibit any conduct or speech by Dolcefino." *Id.* at 200. Furthermore, the court was persuaded that adopting Dolcefino's view of the TCPA as "essentially forbidding CCEMS from seeking a declaration of its duties and obligations" "would likewise undermine the clear directive that the TCPA 'does not abrogate or lessen any other defense, remedy, immunity, or privilege available under

14

other constitutional, statutory, case, or common law or rule provisions,' such as the Declaratory Judgment Act." *Id.* at 200–01 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.011). Concluding that the ambulance service's declaratory-judgment suit did not implicate the TCPA, the court noted that it "address[ed] a genuine controversy that [could] legitimately be resolved by the suit that CCEMS brought." *Id.* at 201.

With this backdrop, the *Van Stean* court agreed that "the declarations and injunctive relief that the appellees seek do not implicate Texas Right to Life's exercise of the rights protected by the TCPA" because "[t]he appellees seek declarations that SB 8 violates the Texas Constitution and that their own conduct cannot be the basis for liability under that statute." 2023 WL 3687408, at *5. As for the requested injunctive relief, the appellees sought to permanently enjoin only "any efforts to enforce SB 8 against them *if* SB 8 is declared unconstitutional."[11] *Id.* As the Austin court explained, the Van Stean and Planned Parenthood appellees were thus not seeking to limit TRL's "constitutional rights . . . to petition, speak freely, associate freely, and otherwise participate in government *to the maximum extent permitted by law.*" *Id.* (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.002); *see also Grant v. Finecy*, No. 02-23-00310-CV, 2023 WL 8940395, at *7–8 (Tex. App.—Fort Worth Dec. 28, 2023, no pet. h.) (recognizing that "the TCPA's broad definitions concerning the

---

[11]Here, Lilith Fund pleaded for essentially the same thing, asking for a "temporary injunction . . . enjoining [Weldon], and any of her agents and any person or entity acting in concert with her from instituting lawsuits pursuant to SB 8 against Lilith Fund *until or unless this case comes to a conclusion.*" [Emphasis added.]

15

exercise of protected rights are necessarily restricted by the statute's expressly stated purpose 'to encourage and safeguard the *constitutional* rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent *permitted by law*'" and concluding that the TCPA did not apply to plaintiff's stalking claim predicated on conduct not protected by the First Amendment (quoting *Sanchez v. Striever*, 614 S.W.3d 233, 245 (Tex. App.—Houston [14th Dist.] 2020, no pet.))).

The TCPA's plain language also supported the first-step analysis in *Van Stean* because of the TCPA's purpose to protect not only a party's constitutional rights but also, as a counterbalance, to "*protect the rights of a person to file meritorious lawsuits for demonstrable injury.*" 2023 WL 3687408 at *6 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.002). In the court's view, if the TCPA were interpreted to forbid the appellees from seeking an answer to SB 8's constitutionality, that interpretation would "undermine the [Legislature's] clear directive that the TCPA 'does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions,' such as the Declaratory Judgment Act." *Id.* (quoting *Dolcefino*, 540 S.W.3d at 200–01); *see also Gilani*, 2022 WL 714700, at *4 (same). Particularly because the declaratory-judgment act is meant "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" and "is to be liberally construed and administered," Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b), the Austin court easily

16

separated the declarations that the appellees sought from the alleged protected conduct to which TRL pointed. The long and the short of it was that "[t]he TCPA does not allow Texas Right to Life 'to bypass the protections accorded by the UDJA to anyone whose own rights are affected by a statute,'" such as the appellees who "assert[ed] that they have rights that are affected by SB 8." *Van Stean*, 2023 WL 3687408, at *6 (quoting *Dolcefino*, 540 S.W.3d at 201–02).

We can see no reason to disagree with our sister court. Although *Van Stean* did not involve an earlier-filed Rule 202 petition, as this case does, we do not consider that procedural difference significant enough to warrant a different outcome.[12] TRL put up a website and Weldon filed a Rule 202 petition, but the consequent declaratory-judgment actions filed by the Van Stean parties and Lilith Fund, respectively, were not based on or in response to TRL's or Weldon's protected conduct within the TCPA's meaning.[13]

We conclude and hold that the TCPA does not apply to Lilith Fund's suit and overrule Weldon's first issue.

---

[12]*Choudhri*, for example, involved a declaratory-judgment action filed after Choudhri had initiated actual lawsuits, and the appellate court still held that the TCPA did not apply because Lee's declaratory-judgment action did not implicate Choudhri's right to petition. *See* 2020 WL 4689204, at *1–2.

[13]The parties should not take our holding as suggesting that the TCPA would never apply to declaratory-judgment claims, only that in a situation like this, where Lilith Fund's requested relief does not seek to prohibit Weldon from engaging in constitutionally protected activity, the declaratory-judgment claim is of a type that is properly protected from dismissal. *See Gilani*, 2022 WL 714700, at *4.

**Remaining Issues**

Weldon's sixth issue deals with whether Lilith Fund met its second-step TCPA burden to establish a prima facie case for each element of its claims, an issue we need not reach. *See, e.g.*, *TotalGen Servs.*, 2021 WL 210845, at *2 n.3. Her second through fifth issues ask questions that do not involve a TCPA dismissal motion and that are therefore beyond the scope of this narrow interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). Rule 47.1 of our procedural rules, properly understood, acts as a brake to keep us from opining on unnecessary things, so we will not. *See* Tex. R. App. P. 47.1.

## Conclusion

Having overruled Weldon's dispositive first issue, and thus not needing to reach her remaining issues, we affirm the trial court's denial of her TCPA motion to dismiss.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  March 7, 2024

18